ILND 44  (Rev. 07/13/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

### DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:          IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | |    28 USC 157 |    3729 (a)) |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | | **SOCIAL SECURITY** |    Corrupt Organizations |
| ☐ 153 Recovery of |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
|    Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI |    Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | | ☐ 893 Environmental Matters |
| | |    Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** |    Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting |    Sentence | |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | |    26 USC 7609 |    Agency Decision |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities | ☐ 540 Mandamus & Other | | **IMMIGRATION** |    State Statutes |
| |    Employment | ☐ 550 Civil Rights | | ☐ 462 Naturalization Application | |
| | ☐ 446 Amer. w/Disabilities | ☐ 555 Prison Condition | | ☐ 463 Habeas Corpus - | |
| |    Other | ☐ 560 Civil Detainee - | |    Alien Detainee | |
| | ☐ 448 Education |    Conditions of | |    (Prisoner Petition) | |
| | |    Confinement | | ☐ 465 Other Immigration | |
| | | | |    Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation-
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII. Previous Bankruptcy Matters (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
     UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:          ☐ Yes  ☐ No

## IX. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____          DOCKET NUMBER _____

## X. This case (check one box)  ☐ Is not a refiling of a previously dismissed action  ☐ is a refiling of case number _____ previously dismissed by Judge _____

DATE _____          SIGNATURE OF ATTORNEY OF RECORD _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Flava Works, Inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Marques Rondale Gunter d/b/a** | ) | |
| **myVidster.com, SalsaIndy, LLC, d/b/a** | ) | |
| **myVidster.com,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Flava Works, Inc. (hereinafter "Plaintiff" or "Flava"), by and through its attorney, The Tracy Firm, LTD, and for its Complaint against the Defendants, Marques Rondale Gunter d/b/a myVidster.com and SalsaIndy, LLC d/b/a myVidster.com (collectively, "Defendants" or "myVidster"), states as follows:

## NATURE OF THE ACTION

1.      This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.* and to enforce a settlement agreement.

2.      Plaintiff brings this action to enjoin Defendants from further direct infringement of Flava's copyrights and from contributing to, vicariously profiting from, and inducing the infringement of Plaintiff's copyrights on the worldwide internet.

3.      Plaintiff also brings this action to enjoin Defendants from infringing its trademarks pursuant to 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a); common law unfair competition; and the Illinois Uniform Deceptive Trade Practices Act 815 ILCS §§ 501/1 *et seq.*

1

4.    Plaintiff seeks damages from Defendants as compensation for the losses and injuries sustained as a result of Defendants' improper conduct.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 17 U.S.C. §501, 28 U.S.C. §§ 1331, 1338(a)&(b), and 1367.

6.    This Court has personal jurisdiction over Defendants because Defendants have provided services to persons within this District, Defendants regularly transact and conduct business within this District, and Defendants otherwise have made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(a), (b), and (c), because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants have sufficient connection with the District of Illinois to make venue proper in this District.

8.    Pursuant to Paragraph 14 of the settlement agreement between the parties (the "Settlement Agreement" attached hereto as Exhibit A), the parties shall bring any action regarding any dispute arising in connection with the Settlement Agreement in Federal District Court for the Northern District of Illinois to the extent it has subject matter jurisdiction. Paragraph 14 also provides that the Settlement Agreement and its performance are to be governed by and construed in accordance with the laws of the State of Illinois without recourse to any conflict of laws principles.

## THE PARTIES

9.      Plaintiff, Flava Works, Inc. ("Flava"), is a corporation incorporated under the laws of the State of Illinois with its principal place of business at 3526 South Prairie Avenue, Chicago, Illinois 60653.

10.     Defendant, SalsaIndy LLC d/b/a myVidster.com ("SalsaIndy"), is a limited liability corporation organized under the laws of the State of Indiana.

11.     According to the business details provided the Indiana Secretary of State, SalsaIndy's principal office address is at 815-A Brazos Street #365, Austin, Texas 78701.

12.     On information and belief, defendant Marques R. Gunter ("Gunter") is an individual residing in the state of Texas, and is the sole owner, operator, founder, proprietor, employee, officer, manager and member of SalsaIndy.  Gunter is also SalsaIndy's registered agent.

## FACTUAL BACKGROUND

**Plaintiff Flava**

13.     Flava specializes in the production and distribution of adult entertainment featuring black and Latin men having sex with other men ("Flava's Videos").

14.     Flava adult entertainment is made in the form of DVDs, magazines, websites, pictures, streaming video and other media.

15.     Flava has applied for, filed and registered various copyrights for its works with the U.S. Copyright Office.  (*See* List of Flava Works, Inc.'s Registered Copyrights, attached as Exhibit B hereto.)

16.     Plaintiff distributes its adult entertainment through various distributors and licensees, as well as through its websites: www.rawrods.com, www.FlavaMen.com,

www.CocoDorm.com, www.CocoStore.com, www.PapiCock.com, and www.ThugBoy.com, among others.

17.     These websites host Flava's Videos behind a "pay wall," that is access to them (except for previews) is available only upon payment of a fee in advance.

18.     Users of these websites must agree not to copy, transmit, sell, etc. Flava's Videos, although the website's terms of use permit the user to download videos to their computer for their "personal, noncommercial use" only.

**Gunter and myVidster.com**

19.     On information and belief, defendant, Marques Rondale Gunter (hereinafter "Gunter") is the sole founder, sole designer, sole programmer and sole operator the website myVidster.com ("myVidster.com" or the "Website").

20.     MyVidster.com is a self-described social video sharing and bookmarking site — enabling individuals who have similar tastes to point one another (and actually provide one another access) to online materials that cater to those tastes.

21.     On information and belief, Gunter designed his feature-rich website to enable users to collect and share videos found on the internet, including Flava's.

22.     Users of myVidster.com find videos on the Internet and "bookmark" them on the Website in order to make them available to other users of myVidster.com.  Upon receiving the bookmark, myVidster.com automatically requests the video's "embed code" from the server that hosts (that is, stores) the video.

23.     In the present context "server" denotes a specialized computer for storing and transmitting bulky online materials, like videos. When a user uploads a video to the Internet, the video is stored on a server that transmits the video to other Internet users' computers on request.

24.     The embed code contains the video's web address plus instructions for how to display the video. Armed with that code, myVidster.com creates a web page that makes the video appear to be on myVidster.com. When a user visits the site, that video and other videos appear, each in the form of a "thumbnail," a still capture or "screen shot," from the copyrighted work. A click on a thumbnail activates computer code that connects the visitor's computer to the server; the connection made, the visitor is now watching the video. He's watching it through a frame that myVidster.com has put around it, which contains ads. The video is being transmitted directly from the server on which the video is stored to the viewer's computer. Someone had uploaded the video to that server, and later a subscriber to myVidster.com had come across it and decided to bookmark it. This led to the creation of a page on myVidster.com and by clicking on the page other visitors to myVidster.com can now view the video on the server that hosts the video, not on myVidster.com's server.

25.     MyVidster's technology extracts screen shots from the video, which can be found on its servers.  Those screen shots contain copyrighted images and offer a quick preview of the contents of the video used to attract viewers.

26.     MyVidster enables its users to do more than merely view thumbnails and "share" and "bookmark" videos uploaded to other websites.

27.     MyVidster's technology enables registered free users to download copies of videos found on the web to the users' personal computing devices (the "Download Feature") for personal viewing and sharing with others.

28.     On information and belief, the Download Feature permits users to download videos without any digital rights management.  Accordingly, once a Flava video is downloaded by a myVidster user, that user has unfettered control over the copy made of the work.

29.     Registered free users can upgrade to a paid pro account (the "Pro Accounts"). The Pro Accounts allow users to save videos to a cloud for safe keeping, later viewing, sharing, and reposting.

30.     According to its website, "MyVidster…offers a PRO service for those who want to take their myVidster experience to the next level!"  MyVidster enables Pro users to "Save your videos to the cloud for safe keeping!" (The feature described in Para. Nos. 29 and 30 will be identified herein as "Cloud Backup.")

31.     For $4.99 a month, a "Silver Pro" is entitled to 50 Gigabytes ("GB") of Cloud Backup and "some" ad removal on the video player.

32.     For $6.99 a month, a "Gold Pro" is entitled to 100 GB of Cloud Backup and "more" ad removal on the video player.

33.     For $8.99 a month, a "Platinum Pro" is entitled to 200 GB[1] of Cloud Backup and "more" ad removal on the video player.

34.     On information and belief, Defendant's Cloud Backup is currently maintained, operated and managed by a third party cloud storage service provider on a third party storage server (the "Third Party Cloud Services").

35.     On information and belief, LeaseWeb USA, Inc. d/b/a LeaseWeb.com, LeaseWeb B.V. d/b/a Leaseweb.com, and Amazon Web Services may provide (or have provided) Third Party Cloud Services to Defendants.

36.     MyVidster's Pro Users are willing to pay a high price to copy videos through myVidster's Cloud Backup and store them indefinitely.  By way of comparison, "Dropbox.com"

---

[1] By order of magnitude, a SD feature length film featured on iTunes is typically 1-3 GB in size.

the popular online cloud storage service, offers 1 TB (1,000 GB) of storage for $9.99 a month as of February 7, 2017.

37.     The myVidster application for iPhone and Android allows users to save videos to the Cloud Backup directly from their smartphones, and to access those videos later on demand.

38.     In a section of the "Upgrade to MyVidster Pro!" page on myVidster.com titled "Showing love," Gunter stresses that the Pro Accounts are a critical source of revenue:

> If you have read the MyVidster blog, you would know that MyVidster is a self funded and solo project. I have invested time, money and my social life building this site. I am not backed by venture capitalists and all the expenses are paid out of my pocket. If you love MyVidster and want to return that love please consider upgrading to PRO today. :)

39.     On information and belief, myVidster's main source of revenue is ad dollars and Pro Accounts.

40.     As the Pro Accounts demonstrate, myVidster is willing to sacrifice ad revenue—by removing ads from its video player—as a means to incentivize free users to upgrade to a paid membership.

41.     MyVidster.com is an extremely popular website.  As of February 7, 2017, Alexa ranks myVidster.com as the 1,260th most popular website in the United States based on average daily visitors and page views over the last 30 days.  The same site ranks myVidster.com as the 2,580th most popular website in the World.  According to Alexa's trend analysis, the site is becoming more popular.

42.     According to the latest information available on myVidster's blog (at blog.myvidster.com), as of November 2, 2013, the traffic analytics for the preceding 30 days were as follows:

310 million page views          14 million visits          442,505 Registered Users

7

**The Prior Litigation**

43.     On October 12, 2010 Flava filed a complaint against SalsaIndy, Gunter, LeaseWeb and John Does 1-26 in the District Court for the Northern District of Illinois alleging various violations of Flava's intellectual property rights (the "Prior Litigation").

44.     On July 27, 2011 Flava obtained a preliminary injunction against myVidster on the basis that it was a contributory infringer of Flava's copyrights.

45.     On appeal, the Seventh Circuit vacated the preliminary injunction on the limited basis that myVidster's bookmarking feature did not contributorily infringe Flava's copyrights. *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012).

46.     The Download Feature currently offered by myVidster violates the exclusive right of a copyright holder to control copying.

47.     According to Judge Posner: **"[A]s long as the visitor [to myVidster] makes no copy of the copyrighted video that he is watching**, he is not violating the copyright owner's exclusive right, conferred by the Copyright Act, "to reproduce the copyrighted work in copies" and "distribute copies … of the copyrighted work to the public.""" *Flava Works, Inc.,* 689 F.3d at 757 (citing 17 U.S. C. § 106(1), (3)) (emphasis supplied).

48.     Judge Posner found that myVidster's back-up service directly infringed Flava's copyrights:

> [Flava] seems at least entitled to an injunction against myVidster's uploading to its website videos in which Flava owns copyrights. Before it was sued by Flava, myVidster had been doing that—making copies of videos that some of its subscribers had posted, including videos copyrighted by Flava. Although myVidster doesn't charge for membership in its social network, it charges a fee for a premium membership that included the backup service. That service infringed Flava's copyrights directly—it didn't just abet others' infringements. MyVidster has stopped offering it. But Flava would still be entitled to an injunction—cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*

8

(TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir.2006). It's thus a surprise that the preliminary injunction doesn't enjoin the backup service, especially since the district judge considered it evidence that myVidster was contributing to the infringing activity of its members…. The backup service was direct infringement—myVidster was copying videos, including some of Flava's, without authorization.

*Flava Works, Inc.*, 689 F.3d at 762.

49.     MyVidster represented to the Court through its counsel that myVidster had ceased offering the back-up service. (*Id.*)

50.     On March, 17, 2015, after years of litigation, Flava entered into the Settlement Agreement with Gunter, myVidster, and SalsaIndy, LLC.

51.     On September 30, 2015 the Prior Litigation was dismissed with prejudice.

**Gunter's Disregard for the Court and Ongoing Violations of Federal Law**

52.     In disregard of its in court assurances, myVidster has resumed offering a back-up service to its paid Pro members.  (*See* discussion of the Cloud Backup, *supra* at ¶¶29-37.)

53.     MyVidster.com also allows registered users to download a copy of Flava's videos, a practice which constitutes direct infringement.  (*See* discussion of the Download Feature, *supra* at ¶¶27-28.)

54.     The Download Feature violates Flava's exclusive rights under the Copyright Act.

55.     MyVidster.com has been a marketplace for free Flava videos since at least 2009.

56.     Flava first leaned that myVidster was a free marketplace for its videos in 2009 when members of Flava's websites began to complain that Flava's content was available for free on myVidster.com.

57.     Flava sends takedown notices pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA Takedown Notice") to Defendants (and to LeaseWeb and

Amazon). Over the years, Flava's notices to myVidster have identified thousands of infringing links.

58.      On information and belief, videos taken down by myVidster pursuant to Flava's DMCA Takedown Notices are not removed from the Cloud Backup.

59.      The Cloud Backup directly infringes Flava's copyrights because myVidster is copying videos, including some of Flava's, without authorization.

60.      Flava's DMCA Takedown Notices are ineffective as to videos already downloaded to user's devices using the Download Feature. Those videos are available to the user even after myVidster removes links to those videos from its site.

61.      A video taken down by myVidster pursuant to a DMCA Takedown Notice can easily be "rebookmarked" by paid user from their Cloud Backup. Once rebookmarked by a user to myVidster's page, the infringing material is again available to myVidster users for viewing, copying, downloading, backing-up and sharing with others ("Rebookmarking"). On information and belief, those Rebookmarked videos are viewed, shared, downloaded, and saved to Cloud Backup by other myVidster users from myVidster's servers, or those servers myVidster leases from third parties. MyVidster's technology has created a veritable cat and mouse game for Flava and others seeking to protect their original works and intellectual property.

**The Settlement Agreement and Release**

62.      As part of the settlement, Gunter, myVidster and SalsaIndy promised to do the following (among other things):

> [Paragraph 1] <u>API Tool</u>. Within thirty (30) days of the Effective Date, Defendants will provide Webmasters (as defined herein) access to a back-end application program interface (API) tool on the myVidster.com website that allows Webmasters to see the source of infringing content and directly remove links to infringing content appearing on the website; provided that, each Webmaster must first authentic itself and request access from myVidster.com to this API. A

10

''Webmaster'' is any person or company that owns and operates a website. Defendants will ensure that when a Webmaster removes a link to infringing content appearing on the myVidster.com website, the entire post or page associated with that link will also be removed thereby preventing the public from accessing the page or post containing the infringing material on the myVidster.com website, including posts or comments relating to the infringing material on the myVidster.com website. Subject to the terms herein, Defendants will provide notification on the myVidster.com website of the availability of this API tool.

[Paragraph 2] <u>Termination of Accounts.</u> Within thirty (30) days of the Effective Date, Defendants will adopt a policy, wherein if Defendants are advised by Plaintiff that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video, Defendants will send that user a notice. If Defendants are advised by Plaintiff on three separate occasions that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video (i.e., after that user has received two notices from myVidster), that user will be considered in violation of myVidster's terms and conditions and Defendants will disable his/her account, including any infringing materials posted by that user. An "Original Poster" is the user that initially linked the content at issue to myVidster.com and who is, therefore, responsible for first introducing the link at issue to the myVidster.com ecosystem. To be clear, an Original Poster is not a user that is merely linking to a link already present on myVidster.com. To facilitate identification of Original Posters, feature to the myVidster.com website that displays the username of the Original Poster beneath the name of each video on myVidster.com (e.g., a caption in the form of "Originally collected by [USER NAME)").

[Paragraph 3] <u>Assurances</u>. Defendants will provide reasonable assurances that the API takedown tool provided pursuant to Paragraph 1 above is functional and will continue to be functional while the myVidster.com website is operational. If at any point the API tool should become non-functional while the myVidster.com website is operational, Defendants shall be required to return the tool to full functioning capacity within 72 hours of Defendants receiving notice that the API tool is not functional; provided that, if it is physically impossible to return the API tool to full functioning capacity within 72 hours by virtue of circumstances beyond Defendants' control, Defendants shall not be in breach of this provision by failing to do so within 72 hours, but Defendants will restore the API tool to full capacity as soon as physically possible.

[Paragraph 4] <u>Do Not Post List</u>. Within thirty (30) days of the Effective Date, Defendants will install a "Do Not Post" list on myVidster.com that directs myVidster users not to post links to certain production companies or studios, including Flava Works.

11

[Paragraph 5] <u>Disclosure of User Information</u>. Upon termination of a myVidster user's account pursuant to Paragraph 2 above, Defendants will disclose to Flava Works certain personal data relating to that user where such data is in Defendants' possession. This personal data may include, · and is limited to, the user's: first and last name, login history (which includes date, time, and IP address at time of login), email address, internet protocol (IP) address, physical and billing address, and last four digits of his/her credit card. By agreeing to this provision, Defendants are in no way representing that they actually possess any of this information for any of their users.

[Paragraph 6] <u>Flava Works Advertisements</u>. Defendants will include for a term of three (3) years commencing within thirty (30) days of the Effective Date a Flava Works banner on the adult home page of the myVidster.com website in the top right corner of the page under the "Create your own Video Collection" heading. This Flava Works banner shall be designed by Plaintiff, and submitted through I-frame banner code such that Plaintiff shall maintain control of the Flava Works banner and may update it as often as Plaintiff desires; provided that, Defendants retain a right of reasonable refusal for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website.

[Paragraph 7] <u>Flava Works Banners</u>. Defendants will, within thirty (30) days of the Effective Date, use the keywords listed in Schedule A to identify Flava Works videos by searching only the title and description of videos on the myVidster.com website, and will include a banner advertisement designed by Plaintiff beneath each such identified video. This banner advertisement is subject to Defendants' approval, which shall not be withheld except for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website. Plaintiff may supplement this list of keywords a total of four (4) times per year, provided that Defendants retain a right of reasonable refusal in deciding whether to adopt such additional, supplemental keywords in the event a proposed keyword is overly-broad or likely to create a large number of false positive hits. In the event that Defendants invoke their reasonable right of refusal based on their belief that a particular keyword is not proprietary to or uniquely associated with Plaintiff, Plaintiff may provide suitable proof of ownership thereof. If Plaintiff provides suitable proof of ownership of a particular keyword, Defendants shall withdraw their refusal. In the event that Plaintiff cannot establish proof of ownership of a particular keyword, Defendants will have no obligation to use that term in identifying Flava Works videos and need not include a banner advertisement beneath videos relating to that keyword. Plaintiff hereby represents and warrants that all model and actor names included in Schedule A as keywords are proprietary to Plaintiff or otherwise refer to models and/or actors who work exclusively for Plaintiff.

[Paragraph 8] <u>Flava Works Collections</u>. Defendants will allow Plaintiff to set up collections for each of its websites on myVidster.com and Defendants

will feature a Flava Works collection on the main home page of the myVidster.com website for a period of five (5) years commencing within thirty (30) days of the Effective Date.

63. The effective date of the Settlement was March 17, 2015 (the "Effective Date").

64. MyVidster breached and continues to breach Paragraph 1 of the Settlement Agreement by failing to provide an API Tool that allows Flava to directly remove links to infringing content on myVidster. Links flagged for removal by Flava using the API Tool are not removed by myVidster until the following day.

65. On information and belief, myVidster breached and continues to breach Paragraph 2 of the Settlement Agreement each time Flava sends three or more DMCA Takedown Notices to myVidster regarding various and particular "Original Posters" (as that term is defined in the Settlement Agreement[2]) of links to infringing Flava videos, yet myVidster fails to disable their accounts and/or the infringing materials posted by those users.

66. MyVidster breached and continues to breach Paragraph 2 of the Settlement Agreement by its treatment of certain Original Posters it identifies as "Unknown." Although myVidster claims that an Original Poster is "Unknown" if that user's account has been disabled pursuant to Flava's DMCA Takedown notices, certain videos posted by unknown Original Posters that infringe Flava's copyrights have not been removed from myVidster.com.

67. MyVidster breached Paragraph 4 of the Settlement Agreement when it waited until approximately three months after the Effective Date of the Settlement Agreement to add Flava to its "Do Not Post" list.

---

[2] An "Original Poster" is the user that initially linked the content at issue to myVidster and who is, therefore, responsible for first introducing the link at issue to the myVidster ecosystem. An Original Poster is not a user that is merely linking to a link already present at myVidster.com. (*See* Settlement Agreement, Exhibit A at ¶2.)

13

68.     MyVidster breached Paragraph 6 of the Settlement Agreement when MyVidster waited approximately one year after the Effective Date of the Settlement to add a Flava banner to myVidster's adult home page.

69.     MyVidster breached (and continues to breach) Paragraph 6 of the Settlement Agreement and the implied covenant of good faith and fair dealing when it reduced the size of the ad space on its mainpage after the parties executed the Settlement Agreement (and refused to change it upon demand).  Until the Settlement was signed, myVidster maintained an ad image size of 300x250 pixels on it mainpage.  On information and belief, myVidster reduced the ad size of the adult home page banners to 300x60 pixels after the Settlement was signed in an act of bad faith.

70.     Defendants breached and continue to breach Paragraph 6 of the Settlement Agreement by making Flava's ads not visible to pro users.

71.     MyVidster breached and continues to breach Paragraph 7 of the Settlement Agreement each time titles and descriptions for particular videos on myVidster.com contain Flava's keywords, yet the Flava banner does not appear beneath each such identified video.

**Infringement of Flava's Trademarks**

72.     Plaintiff has registered trademarks (*e.g*., Flava Works, Rawrods, Thugboy, and Cocodorm) and common law trademarks (collectively "Flava's Trademarks").

73.     In information systems, a tag is a non-hierarchical keyword or term assigned to a piece of information (such as an Internet bookmark, digital image, or computer file). This kind of metadata helps describe an item and allows it to be found again by browsing or searching.

74.     The videos available on myVidster.com have corresponding tags that identify the videos. The tags are volitionally indexed by myVidster, which allows users to search for particular tags and locate corresponding videos with those particular tags (the "Indexing").

75.     MyVidster's tags include Flava's Trademarks.  On information and belief, Flava's Trademarks are popular tags on myVidster.

76.     Users search for free access to copyrighted works on Defendants' website or search engines like Google by entering Flava's Trademarks as search terms.

77.     On information and belief, myVidster has the technology to filter and remove tags which infringe Flava's Trademarks and fails to do so.

78.      As a result of the indexing, searches for Flava's Trademarks drive traffic to pages on myVidster's site.  In cases where the video has been removed, the user will still be directed to myVidster's site by the link.

79.     On information and belief, many users unfamiliar with myVidster believe that myVidster is an authorized distributor of Flava's videos.

80.     Correspondingly, on information and belief, many users familiar with myVidster's intended uses, enter Flava's trademarks into myVidster's search engine in order to find, copy, duplicate, reproduce and distribute Flava's videos without Flava's consent.

81.     Indexing generates traffic to the website, myVidster.com. The increased traffic generates more revenue for myVidster, in the form of advertising revenue and pro accounts.

**Inadequate Repeat Infringer Policy**

82.     MyVidster has an inadequate repeat infringer policy.

83.     On information and belief, at all times relevant, certain myVidster.com users employed the Cloud Backup, Rebookmarking, and/or the Download Feature of myVidster.com to repeatedly copy and share Flava's copyrighted videos ("Repeat Infringers").

84.     On information and belief, the Repeat Infringers target Flava's content for improper distribution, copying, sharing and performance through myVidster.com.

85.     For example, on information and belief, presently unknown individuals with the following screen names have repeatedly used myVidster's technology to distribute, copy, share and perform Flava's videos through myVidster.com: "weezy4twenty; "thedickis10inches"; "nakamichi80"; "mlovesthecock"; "KiDD0"; "iheartfreeporn"; "Fckin2dabeat"' "blacksonblacksonblacks"; "Ayozae"; and "allen843."

86.      After receiving DMCA Takedown Notices from Flava, myVidster has in multiple instances failed to act to prevent future similar infringing conduct by Repeat Infringers.

87.     On information and belief, Gunter designed the Cloud Backup, Rebookmarking, and/or Download Features to enable repeat infringements.  These features allow myVidster users to easily evade Flava's DMCA Takedown Notices.

**Infringing Purpose of MyVidster.Com**

88.     On information and belief, myVidster has evolved into a website that caters to viewers of gay black adult film—the same niche that Flava produces and distributes its videos to.

89.     Gunter maintains a blog called the "MyVidster Development Blog" at www.blog.myvidster.com/ (the "Blog").  According to a 2012 blog entry by Gunter, most (if not all) of the top 10 referral sites (not including Facebook or Twitter) to myVidster that day were gay and/or gay black porn related sites.  On information and belief, at times relevant, most of myVidster's referrals are from gay porn-related websites.

16

90. On information and belief, myVidster's lack of a repeat infringer policy, its Cloud Backup, its Download Feature, its Rebookmarking option and its tagging/indexing system has made the website a marketplace for users to copy, share, and download black gay porn, including Flava's copyrighted works for free and with impunity.

91. On information and belief, Defendant, Gunter, posted entries on Gunter's Blog advertising the infringing purpose of myVidster's technology.

92. Gunter wrote that four reasons to use myVidster's Cloud Backup service are: 1. Video backup bypasses YouTube videos that are private or have disable embedded; 2. Video backup bypasses video host through blog's hotlinking; 3. Video backup works for a variety of video hosts other than YouTube; and 4. Never fearing that your online videos will get removed by the video host.

93. On information and belief, myVidster, generates advertising revenue from the traffic to its website.

94. On information and belief, at all relevant times, myVidster's users used Cloud Backup and Rebookmarking to copy and share Flava's copyright materials on myVidster.com, thus, generating increased traffic to myVidster.com.

95. According to a 2012 post by Gunter on his Blog, "myVidster reaches over 3 million unique visitors a month generating over 100 million page views!  The growth of…myvidster….was from YOU.  You….help financially by upgrading to our PRO account." (Emphasis in original).

96. On information and belief, myVidster has conditioned certain users of the Internet to believe that Flava's copyrighted works are for free and should not be paid for.

97.     On information and belief, users can easily search for certain Flava's copyrighted works by entering Flava's trademarks into myVidster's search engine.

98.     On information and belief, myVidster has the technology and the means to filter out Flava's trademarks in its index and search engine but has refused to implement such filtering.

99.     On information and belief, myVidster uses Flava's trademarks in commerce. MyVidster indexes Flava's trademarks and allows users to search for Flava's copyrighted works by performing key word searches. Users can then backup copies of Flava's copyrighted videos before they are removed from the Internet pursuant to Flava's DMCA Takedown Notices.

100.     On information and belief, myVidster allows a group of repeat infringers to continue backup and/or share Plaintiff's copyrighted works and to use Flava's Trademarks as tags. Users come to myVidster's website to search for copyrighted works by searching the tags consisting of the trademarks. This system for rampant copyright infringement increases web traffic, generating advertising revenue and more paid subscribers.

101.     On information and belief, the use and indexing of Flava's trademarks is done in the connection with Defendants' sale of services of Cloud Backup storage of videos to users or in connection with the distribution of Defendants' services. Defendants offer services in the form of allowing users to backup, tag, index, search for, bookmark, Rebookmark, post, download, and share copyrighted videos.

### Flava's Damages

102.     Through all the Defendants' conduct, Plaintiff has suffered and continues to suffer damage to its reputation and good will through the unauthorized use, reproduction and distribution of Flava's intellectual property.

103.    Plaintiff has suffered, is suffering, and will continue to suffer, irreparable damage to its reputation, potential goodwill and monies spent towards development and the goodwill accumulated through its respective copyrights unless Defendants are restrained by this Court.

104.    Plaintiff will continue to suffer loss of profits and damage to its good will and reputation unless Defendants are restrained and enjoined by this Court.

105.    Plaintiff has no adequate remedy at law.

106.    Through Defendants' conduct, Plaintiff has suffered and continues to suffer the loss of the profits it has the right to realize through the use, reproduction and distribution of Flava's intellectual property. Plaintiff cannot be made whole unless this Court awards Plaintiff damages for Defendants' unauthorized use, reproduction and distribution of Flava's intellectual property.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT
### (as to all Defendants)

107.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

108.    Defendants' conduct interferes with Plaintiff's exclusive right to copy, reproduce, distribute and display the copyrighted works.

109.    Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

110.    Instances of copyright infringement occur whenever one of myVidster's users, without authorization of the copyright owner, uses myVidster's Cloud Backup or Download Feature to make a copy of a copyrighted content file and/or images.  Instance of infringement

also occur when one of myVidster's users Rebookmark Flava videos from their Cloud Backup. Such acts constitute unauthorized reproduction (copying), distribution and performance. Defendants participate in, facilitate, materially contribute to and encourage these infringements.

111.     MyVidster designed its site for an infringing purpose and attracts customers by offering the Cloud Backup, Rebookmarking and/or Download Feature as a means to infringe the copyrights of others with impunity.  On information and belief, links and bookmarks to Flava videos are taken down pursuant to DMCA Takedown Notices, but MyVidster does not remove those videos from its Cloud Backup.

112.     Defendants' aforesaid activities constitute infringement of Plaintiff's copyrights.

113.     As a result of the injury suffered by Plaintiff's business from Defendants' actions of direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as preliminary and permanent injunctive relief to prevent future infringement.

## <u>COUNT II</u>
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (as to all Defendants)

114.      Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

115.     MyVidster's site allows users to bookmark links and/or upload video's protected by Flava's copyrights to myVidster.

116.     Flava's Videos are available for users to view on myVidster's website.

117.     MyVidster enables registered free users to view Flava's Videos, as well as download those videos to their personal devices.

118.     Pro Users with a paid membership can view Flava's Videos, download those videos to their personal devices, and store those videos to myVidster's website using the Cloud Backup.

119.     On information and belief, myVidster users have directly infringed Flava's copyrights by uploading Flava's Videos to myVidster's website, downloading Flava's videos to their personal devices using myVidster's website, storing Flava's videos to myVidster's Cloud Backup and/or Rebookmarking Flava's videos.

120.     Flava sends DMCA Takedown Notices to myVidster regarding Flava's videos.

121.     In many cases, Flava has to send multiple DMCA Takedown Notices to have the same video removed.

122.     MyVidster has been notified of specific infringing uses of its technology and fails to act to prevent future such infringing uses.  Accordingly, defendants actually (and constructively) knew of copyright infringement occurring on myVidster's website.

123.     MyVidster not only received Flava's Notices, but after having received the notices, myVidster failed to act to prevent future similar infringing conduct.

124.     MyVidster had the obligation and ability to control and stop the infringing activity, yet failed to do so.

125.     On information and belief, myVidster's repeat infringer policy is inadequate.

126.     On information and belief, myVidster does not claw back Flava's Videos from its users and/or otherwise restrict the use of Flava's Videos once they have been downloaded.

127.     On information and belief, once one of Flava's videos is downloaded using myVidster's Download Feature, the user has—as a practical matter—unfettered control, use and dominion of the video.

128.     On information and belief, myVidster does not filter (remove) Flava's Videos from its Cloud Backup in response to Flava's DMCA Takedown Notices.

129.     Once in Cloud Backup, myVidster's technology allows users to Rebookmark videos taken down by Flava and make them available once again to myVidster's users with a single click.

130.     MyVidster stores Flava's Videos, allows backup copies to be made, allows downloads, and encourages sharing and performance.

131.     MyVidster provides the website, location and support services to enable users to locate, view copy, save, perform publicly for others, and backup Flava's Videos.

132.     On information and belief, myVidster has permitted, encouraged, and allowed repeat infringers to continue to post copyrighted videos to draw more traffic to its website.

133.     On information and belief, the Defendants aided, abetted, allowed, encouraged and otherwise materially contributed to helping those individuals to reproduce and distribute Flava Works' intellectual property through his website without regard to copyright ownership.

134.     Defendants' conduct constitutes contributor copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act. As a result of the injury suffered by Plaintiff's business from Defendants' actions of contributory copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as preliminary and permanent injunctive relief to prevent future infringement.

## COUNT III
## VICARIOUS COPYRIGHT INFRINGMENT
### (as to all Defendants)

135.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

136.     On information and belief, Gunter designed and selected myVidster's technology (e.g., the Cloud Backup feature, the Download Feature and the Rebookmarking feature) in order to lure customers interested in viewing, collecting and sharing copyrighted material, including Flava's.

137.   On information and belief, the availability of infringing material on myVidster acts as a draw to the site and enhances the site's attractiveness and draws customers.

138.     On information and belief, myVidster received direct financial benefits from the infringements by increasing its website traffic and generating revenue from storage fees (*i.e.*, Pro Account memberships) and increased advertising revenue.

139.   On information and belief, myVidster has the right and ability to supervise, terminate and/or otherwise restrict myVidster users pursuant to the Terms of Service posted on its website, and its other policies.

140.     On information and belief, myVidster have a filtering and flagging system that can be used to filter, flag or remove infringing materials.

141.     On information and belief, myVidster could employ digital rights management technology to restrict and control the downloading of copyrighted works but fails to do so.

142.     On information and belief, myVidster have reserved the right or has the right to control access to the myVidster system, but has failed to adequately police its virtual premise.

23

143.     On information and belief, myVidster has refused to adopt a reasonable definition of "repeat infringer" or to implement a reasonable repeat infringer policy.

144.     On information and belief, myVidster has permitted, encouraged, and allowed repeat infringers to continue to post copyrighted videos to draw more traffic to its website.

145.     Defendants' conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

146.     As a result of the injury suffered by Plaintiff's business from Defendants' actions of vicarious copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as preliminary and permanent injunctive relief to prevent future infringement.

## COUNT IV
## INDUCMENT OF COPYRIGHT INFRINGMENT
### (as to all Defendants)

147.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

148.     MyVidster.com was created and distributed by its founder with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.

149.     On information and belief, myVidster provides the mechanism through which numerous individuals or entities without authorization, reproduced and distributed Flava Works' intellectual property thereby directly infringing on those copyrighted works.

150.     On information and belief, by offering online storage space for those who desire to back-up their bookmarked videos and encouraging users to share and Rebookmark those videos, myVidster intentionally induced users to infringe Flava Works' intellectual property.

151.      On information and belief, by providing technology to bypass privately protected videos and make backup copies to the Cloud Backup or their personal devices, myVidster intentionally induced users to infringe Flava Works' intellectual property.

152.     According to myVidster, the "goal" of "video backup" is "to give the users the option to create a backup of their bookmarked videos to the myVidster server so that they do not need to worry about their videos being taken down by the video host (ie [sic] Youtube)" pursuant to a DMCA Takedown Notice.

153.     MyVidster advertises that video Backup bypasses privacy protections on websites (such as those maintained by Flava and its licensed distribution partners).

154.     It also advertises that its Cloud Backup allows users to indefinitely store videos that are taken down by a variety of hosts

155.     According to myVidster a user would "want to use… [myVidster's] Video Backup Service" for the following four reasons (the "Four Reasons"):

> **Reason #1:** Video Backup bypasses Youtube's videos that are private or have disabled embedded.
>
> **Reason #2:** Video Backup bypasses video host who blocks hot linking, ie Facebook videos.
>
> **Reason #3:** Video Backup works for a variety of video hosts other then [sic] Youtube, Facebook videos, Vimeo, Myspace, Veoh, MetaCare to name a few.
>
> **Reason #4:** Never fearing that your online videos will get removed by the video host.

156.     By inviting users to bypass privately protected videos and make backup copies, myVidster intentionally induced users to infringe Flava Works' intellectual property.

25

157.    On information and belief, by encouraging users to share copyrighted videos with friends and family, myVidster intentionally induced users to infringe Flava Works' intellectual property.

158.    On information and belief, myVidster had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.

159.    On information and belief, Defendant, Gunter, posted entries on myVidster.com's blog to induce users to upgrade (purchase) the Cloud Backup service and backup copyrighted videos.

160.    On information and belief, Defendant, Gunter gives instructions on users on how to add a plug-in for the Firefox browser that allows users to surf the internet and copy and post copyrighted videos that are private or have been disabled from being copied (the "Firefox Add-On").

161.    According to Gunter:

The Video Bookmarks button from myVidster is a video bookmarking tool that provides an [sic] quick and easy way to collect, download, backup, organize and share videos from any video host, website and blog.

With Video Bookmarks you can:
Save videos from any video host to your personalize video collection.
Download videos from 1000s of video hosts (Youtube, blip.tv, Veoh, Vimeo, Dailymotion etc).
Backup your saved videos to myVidster servers for save [sic] keeping. No need to worry about the video host removing your favorite videos.
Organize your video collection, by tagging and creating video channels.

162.    According to the Firefox Add-On Manager, the tools gets an average rating of 5/5 stars by users.

163.    On information and belief, Defendants' conduct constitutes inducement copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

164.    As a result of the injury suffered by Plaintiff's business from Defendants' actions of inducement of copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as preliminary and permanent injunctive relief to prevent future infringement.

**COUNT V**
**BREACH OF CONTRACT**
**(as to all Defendants)**

165.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

166.    The Settlement Agreement is a valid and enforceable contract entered into for valuable consideration.

167.    In Illinois, every contract is subject to an implied covenant known as a covenant of good faith and fair dealing.

168.    MyVidster breached and continues to breach Paragraph 1 of the Settlement Agreement by failing to provide an API Tool that allows Flava to directly remove links to infringing content on myVidster.  Links flagged for removal by Flava using the API Tool are not removed by myVidster until the following day.

169.    On information and belief, myVidster breached and continues to breach Paragraph 2 of the Settlement Agreement each time Flava sends three or more DMCA Takedown Notices to myVidster regarding various and particular "Original Posters" (as that term is defined

27

in the Settlement Agreement[3]) of links to infringing Flava videos, yet myVidster fails to disable their accounts and/or the infringing materials posted by those users.

170.     MyVidster breached and continues to breach Paragraph 2 of the Settlement Agreement by its treatment of certain Original Posters it identifies as "Unknown."  Although myVidster claims that an Original Poster is "Unknown" if that user's account has been disabled pursuant to Flava's DMCA Takedown notices, certain videos posted by unknown Original Posters that infringe Flava's copyrights have not been removed from myVidster.com.

171.     MyVidster breached Paragraph 4 of the Settlement Agreement when it waited until approximately three months after the Effective Date of the Settlement Agreement to add Flava to its "Do Not Post" list.

172.     MyVidster breached Paragraph 6 of the Settlement Agreement when MyVidster waited approximately one year after the Effective Date of the Settlement to add a Flava banner to myVidster's adult home page.

173.     MyVidster breached (and continues to breach) Paragraph 6 of the Settlement Agreement and the implied covenant of good faith and fair dealing when it reduced the size of the ad space on its mainpage after the parties executed the Settlement Agreement (and refused to change it upon demand).  Until the Settlement was signed, myVidster maintained an ad image size of 300x250 pixels on it mainpage.  On information and belief, myVidster reduced the ad size of the adult home page banners to 300x60 pixels after the Settlement was signed in an act of bad faith.

---

[3] An "Original Poster" is the user that initially linked the content at issue to myVidster and who is, therefore, responsible for first introducing the link at issue to the myVidster ecosystem. An Original Poster is not a user that is merely linking to a link already present at myVidster.com. (*See* Settlement Agreement, Exhibit A at ¶2.)

174.    Defendants breached and continue to breach Paragraph 6 of the Settlement Agreement by making Flava's ads not visible to pro users.

175.    MyVidster breached and continues to breach Paragraph 7 of the Settlement Agreement each time titles and descriptions for particular videos on myVidster.com contain Flava's keywords, yet the Flava banner does not appear beneath each such identified video.

176.    As a direct and proximate result of myVidster's breaches, Plaintiff has suffered a loss of revenue, the nature and extent of which is not presently ascertainable, as well as damage to Flava's reputation and goodwill.

177.    As a result of the injury suffered by Plaintiff's business from Defendants' breaches, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as preliminary and permanent injunctive relief to prevent future infringement.

### COUNT VI
### TRADEMARK INFRINGMENT AND FEDERAL UNFAIR COMPETITION
### 15 U.S.C. § 1114(1) & 15 U.S.C. § 1125(a)
### (as to all Defendants)

178.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

179.    On information and belief, myVidster's Indexing of Flava's Trademarks, without filtering and removing them, constitutes an unauthorized use of Plaintiff's registered trademarks in commerce in violation of 15 U.S.C. § 1114(1).

180.    MyVidster's Indexing allows it to use Flava's Trademarks in commerce to attract customers to myVidster's site.

181.     On information and belief, because Flava's Trademarks remain on myVidster after indexing, individuals searching for Flava's Trademarks will be diverted through third-party search engines to myVidster.

182.     MyVidster's use of Flava's Trademarks is likely to create confusion as to the sources of services being provided.  On information and belief, Flava's customers, including would-be customers, believe and/or are likely to believe that myVidster is one of Flava's authorized distributors.

183.     Defendants' ongoing use of Flava's Trademarks constitute false designations of origin and false descriptions or representations that myVidster's business originates from or is authorized by Flava, when in fact it is not.

184.     As a result of myVidster's unauthorized use of Flava's Trademarks, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of myVidster's services.

185.     MyVidster's conduct is willful, intended to reap the benefit of Flava's goodwill, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

186.     Defendants' aforesaid conduct is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Flava and to deceive the public.  Flava has no adequate remedy at law.

187.     As a result of myVidster's wrongful conduct, Flava has suffered and will continue to suffer damages. Flava is entitled to preliminary and permanent injunctive relief and to an order compelling the impounding of all Indexed Flava Trademarks being used, offered, advertised, marketed, installed, or distributed by myVidster. Flava has no adequate remedy at law for myVidster's wrongful conduct because, among other things, (a) Flava's Trademarks are

unique and valuable property which has no readily determinable market value, (b) myVidsters'

infringement constitutes harm to Flava such that Flava could not be made whole by any

monetary award, (c) if myVidster's wrongful conduct is allowed to continue, the public is likely

to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the

infringing materials, and (d) myVidsters' wrongful conduct, and the resulting damage to Flava, is

continuing.

### COUNT VII
### COMMON LAW UNFAIR COMPETITION
### (as to all Defendants)

188.    Plaintiff repeats and re-alleges each and every allegation contained in the

preceding paragraphs in this Complaint, and incorporates them herein by reference.

189.    MyVidster's Indexing of Flava's Trademarks constitutes false designations of

origin and false descriptions or representations that myVidster's services originate from, or are

offered, sponsored, authorized, licensed by, or otherwise somehow connected with Flava, when

in fact they are not. As a result of myVidster's conduct, the public is likely to believe that

myVidster's goods or services have originated from and/or have been approved by Flava.

190.    MyVidster's unauthorized use of Flava's Trademarks falsely represents that

myVidster's services emanate from or are authorized by Flava and places beyond Flava's control

the quality of such services, and the message that is associated with such services.

191.    MyVidster's conduct is willful, intended to reap the benefit of the goodwill

associated with Flava's Trademarks, has caused and continues to cause damage and injury to

Flava's Trademarks, and constitutes common law unfair competition.

192.    As a result of myVidster's wrongful conduct, Flava has suffered and will

continue to suffer damages. Flava is entitled to preliminary and permanent injunctive relief and

to an order compelling the impounding of all Indexed Flava Trademarks being used, offered, advertised, marketed, installed, or distributed by myVidster. Flava has no adequate remedy at law for myVidster's wrongful conduct because, among other things, (a) Flava's Trademarks are unique and valuable property which has no readily determinable market value, (b) myVidsters' infringement constitutes harm to Flava such that Flava could not be made whole by any monetary award, (c) if myVidster's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials, and (d) myVidsters' wrongful conduct, and the resulting damage to Flava, is continuing.

## COUNT VIII
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS §§ 510/1 et. seq.
### (as to all Defendants)

193.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

194.     MyVidster's unauthorized use of Flava's Trademarks to promote, advertise, market, and/or sell their services is likely to cause confusion, mistake, and deception of the public as to the identity and origin of myVidster' services, or as to a connection or affiliation with Flava, or permission from Flava, that does not exist, causing irreparable harm to Flava for which there is no adequate remedy at law.

195.     MyVidster's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Flava in its Trademarks.

196.     Flava has sustained injury, damage, and loss based on myVidster's actions.

197.     As a result of myVidster's wrongful conduct, Flava has suffered and will continue to suffer damages. Flava is entitled to preliminary and permanent injunctive relief and

to an order compelling the impounding of all Indexed Flava Trademarks being used, offered, advertised, marketed, installed, or distributed by myVidster. Flava has no adequate remedy at law for myVidster's wrongful conduct because, among other things, (a) Flava's Trademarks are unique and valuable property which has no readily determinable market value, (b) myVidsters' infringement constitutes harm to Flava such that Flava could not be made whole by any monetary award, (c) if myVidster's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials, and (d) myVidsters' wrongful conduct, and the resulting damage to Flava, is continuing.

**WHEREFORE** Plaintiff, Flava Works, Inc. respectfully requests that this Honorable Court enter the following:

      a.      A judgment in its favor for Plaintiff, Flava Works, Inc. and against each and every defendant.

      b.      A preliminary injunction and permanent injunction against Defendants and their aliases, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under Defendants and each of them during the pendency of this action as preliminary injunction and permanently thereafter from:

      i.      Providing the Download Feature to users;

      ii.      Providing Cloud Backup storage to users;

      iii.      Allowing Flava's Videos to remain saved in Pro user's clouds after receiving Takedown Notices;

iv.     Advertising and inviting users to use myVidster's technology to circumvent blocks intended to protect third-party intellectual property rights;

v.     Indexing tags without filtering and removing Flava's Trademarks;

vi.     Further violations of the Settlement Agreement;

vii.     Allowing Rebookmarking of videos identified in DMCA Takedown Notices;

viii.     Providing an API Tool which does not allow Flava to directly remove links to infringing content without a processing delay;

ix.     Failing to disable the accounts of Original Posters that are repeat offenders;

x.     Disabling accounts of repeat offenders but failing to remove videos posted by them;

xi.     Maintaining a Flava Works Adult Front Page Banner of less than 300x250 pixels;

xii.     Making Flava banners and ads not visible to pro users;

xiii.     Failing to have Flava banners appear beneath videos which contain Flava's keywords;

xiv.     Posting on any website(s) material that infringes Flava Works' intellectual property, as well as facilitating the posting on any website(s) by third parties infringing material and/or links which enable the easy access to Flava Works' intellectual property that is located on third party websites;

xv.     Otherwise distributing, reproducing, using, copying, streaming, making available for download, or otherwise exploiting Flava Works' intellectual property, including Plaintiff's copyrighted works, trademarks, trade dress, or any other product

or symbol with the indicia of Plaintiff's ownership, through use of their website(s) or otherwise;

xvi.    Doing any other act, through his website(s) or otherwise, which shall confuse, deceive, cause mistake, etc. among the relevant trade and general public as to the association, sponsorship and/or approval between Plaintiff and any website(s);

xvii.   From otherwise using, copying or otherwise exploiting Plaintiff's copyrights and copyrighted works;

xviii.  From otherwise doing any other act or thing likely to, or calculated to, induce the belief that Defendants or Defendants' business is in any way affiliated, connected associated with Plaintiff, or Plaintiff's business; and

xix.    From otherwise unfairly competing with plaintiffs in any manner.

c.      Requiring Defendants to submit to the Court and to serve upon Plaintiff a report, written under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of this injunction;

d.      Requiring Defendants to cease operation of the website domain myVidster.com and to  transfer ownership of myVidster.com immediately to Plaintiff;

e.      Disgorging Defendants of any profits they may have made as a result of his infringement of Flava Works' intellectual property;

f.      Awarding Plaintiff the actual damages sustained by Plaintiff as a result of Defendants' infringement of Flava Works' intellectual property, the amount of which is to be determined at trial;

g.      Awarding Plaintiff compensatory and punitive damages, as deemed just and proper by this Court, as a result of the willful misconduct on the part of the Defendants;

h.          Awarding Plaintiff the costs of this action, together with reasonable attorney's

fees;

i.          Awarding Plaintiff enhanced statutory damages, pursuant to 15 U.S.C. §

504(c)(2) of the Copyright Act, for Defendants' willful infringement of Plaintiff's

copyrighted works;

j.          Awarding Plaintiff its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) &

(b), arising out of Defendants' acts of willful trademark infringement.

k.          Awarding Plaintiff its actual damages, trebled pursuant to 15 U.S.C. § 1116(d),

arising out of Defendants' use of counterfeit trademarks.

l.          Awarding Plaintiff its actual damages, trebled pursuant to 15 U.S.C. § 1117(a),

arising out of Defendants' acts of willful unfair competition.

m.          Awarding punitive damages;

n.          Ordering that the domain name myVidster.com be transferred to Plaintiff; and

o.          Awarding any such other and further relief as this Court deems just, reasonable

and equitable.


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues properly reliable by jury in this action,

pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 14, 2017                                   Respectfully Submitted:


                                                          By: /s/ Nathan Larsen
                                                          One of Flava Works, Inc.'s
                                                          Attorneys


Adam S. Tracy
Nathan Larsen (Atty No. 6290008)
The Tracy Firm, LTD.
2100 Manchester Rd. Suite 615
Wheaton, IL 60187
(888) 611-7716 Tel.
(630) 689-9471 Fax.