IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLAVA WORKS, INC., | ) | |
| | ) | |
| Plaintiff | ) | Case No. 17 C 1171 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MARQUES RONDALE GUNTER, d/b/a | ) | |
| myVidster.com, SALSAINDY, LLC, D/B/A | ) | |
| myVidster.com, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Flava Works, Inc. has brought an eight count complaint against defendants Marques Rondale Gunter and SalsaIndy, LLC, both doing business as myVidster.com (jointly as "defendants") alleging: direct copyright infringement (Count I); contributory copyright infringement (Count II); vicarious copyright infringement (Count III); inducement of copyright infringement (Count IV); breach of contract (Count V); trademark infringement and unfair competition (Count VI); common law unfair competition (Count VII); and violation of the Illinois Uniform Deceptive Trade Practices Act (Count VIII). Defendants have moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons described below, defendants' motion is granted in part and denied in part.

## **BACKGROUND**

Plaintiff produces and distributes adult entertainment products including DVDs, magazines, websites, pictures, and streaming videos featuring black and Latin men having sex with other men. Plaintiff has applied for and registered various copyrights for its works. It distributes its products through various distributors and licensees, and through its own websites,

which host plaintiff's videos behind a "paywall" which requires advance payment before one can view a video. Users of plaintiff's website must agree not to copy, transmit or sell plaintiff's videos, but can download a video to their own personal computer for "personal non-commercial use."

The complaint describes myVidster.com ("myVidster") as a social video sharing bookmarking site that enables individuals who have similar tastes to point one another and provide access to online material that caters to those tastes. The complaint alleges that defendant Gunter, the founder of myVidster, designed the website to enable users to collect and share videos found on the internet. Users find videos on the internet and "bookmark" them on myVidster to make them available to other users of myVidster. When myVidster receives the bookmark it automatically requests the video's "embed code" from the server that hosts (stores) the video. The embed code contains the video's web address plus instructions on how to display the video.

When a user visits myVidster, thumbnails of bookmarked videos appear. A click on the thumbnail connects the user's computer to the host server and the video is displayed. Plaintiff claims that the thumbnails on myVidster contain "screen shots," some of which contain copyrighted images. According to the complaint, myVidster has a "download" feature that allows registered free users to download copies of videos found on the web to the user's personal computers.

Registered free users of myVidster can upgrade to a paid pro account (the "pro accounts") that allows the users to save videos to a cloud for safekeeping, later viewing, sharing, and reposting.

The instant case is not the first time plaintiff has sued defendants. In October 2010 plaintiff sued defendants bringing essentially the same allegations contained in the instant complaint. Judge Grady, to whom that case was assigned, dismissed all counts except the claim for contributory infringement. Flava Works, Inc. v. Gunter, 10 CV 6517, Doc. 44 (N.D. Ill. May 10, 2011). The court then entered a preliminary injunction against the defendants on the basis of contributory infringement. Id. (Doc. 77).

On appeal, the Seventh Circuit vacated the injunction, concluding that the infringing parties were those that upload the copyrighted materials to the host servers. myVidster members and myVidster were merely providing a link to those servers, and when myVidster members viewed the videos they were not infringing because no copies were made. Because the member users were not making copies, myVidster could not be guilty of contributory infringement. Flava Works v. Gunter, 689 F.3d 754, 757-60 (7th Cir. 2012) ("Flava I"). The parties then reached and entered into a complicated settlement agreement, which plaintiff alleges defendants have breached.

## DISCUSSION

Defendants have moved to dismiss the entire complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

3

555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Copyright Claims**

Count I – Direct Copyright Infringement

To state a claim for direct copyright infringement plaintiff must allege facts setting forth: (1) ownership of a valid copyright in a work; and (2) copying of elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tele. Serv. Co. Inc., 499 U.S. 340, 361 (1991).

After Flava I, it is abundantly clear that myVidster's "bookmarking" service does not directly infringe any of plaintiff's possible copyrights, because defendants do not make any copies of plaintiff's works. The complaint itself alleges that once a myVidster user clicks on a thumbnail the video is transmitted directly from the host (third party) server on which it is stored to the viewer's computer. The video is not stored on defendant's server. Plaintiff does not dispute this.

Instead, plaintiff argues that defendant has "upgraded" its technology since Flava I, and that its newly offered "new cloud system" by which myVidster users can upload and store videos, constitutes direct copyright infringement. According to the complaint, the "cloud backup directly infringes [plaintiff's] copyrights because myVidster is copying videos, including some of [plaintiff's] without authorization."

Under Flava I, it appears that if a myVidster member uploads a video to myVidster's cloud, it is the member that would be the infringer. See Religious Tech. Car. v. Netcom On-Line Comm. Servs., Inc., 907 F.Supp. 1361, 1371 (N.D. Cal. 1995). If, however, the member is using myVidster technology to copy the video onto a myVidster server from the host server then, as

4

alleged, myVidster is copying the video and is a direct infringer. That is why in <u>Flava I</u>, Judge Posner indicated that defendants' old "back up service" infringed plaintiff's copyrights. "The backup server was direct infringement – myVidster was copying videos, including some of Flava's without authorization." <u>Flava I</u>, 689 F.3d at 754.

Consequently, based on the complaint's description of plaintiff's "new cloud service" the court concludes that Count I could state a claim for direct infringement if plaintiff has identified any specific work that defendant copied.

<u>Count II- Contributory Infringement</u>

To state a claim for contributory copyright infringement, plaintiff must allege: (1) direct infringement by a primary infringer; (2) the defendant's knowledge of the infringement; and (3) the defendant's material contribution to the infringement. <u>Monotype Imaging, Inc. v. Bitstream, Inc.</u>, 376 F.Supp.2d 877, 883 (N.D. Ill. 2005). In <u>Flava I</u>, the Seventh Circuit described contributory infringement as "personal conduct that encourages or assists the infringement." 689 F.3d at 757.

<u>Flava I</u> holds that defendants' "bookmarking services" do not constitute contributory infringement because there is no primary infringement when myVidster members view the videos from the host servers. Defendant argues that the instant complaint makes the same allegations and fails for the same reasons.

The instant complaint alleges, however, that once uploaded to myVidster cloud servers, videos are available for download to members' personal computers. If a member downloads a copyrighted video without authorization, the member directly infringes and, according to the

complaint, defendant assisted in that infringement. Consequently, the complaint describes a system by which defendant could be guilty of contributory copyright infringement.

Count III – Vicarious Copyright Infringement

To state a claim for vicarious copyright infringement plaintiff must allege that defendants: (1) at all material times possessed the right and ability to supervise the infringing activity; and (2) have a direct financial interest in the infringer's activity. In re Aimster, 252 F.Supp.2d 634, 654 (N.D. Ill. 2002) (aff'd) 334 F.3d 643 (7th Cir. 2003).

The instant complaint fails to identify any third party users of myVidster that have infringed plaintiff's copyright. Nor does the complaint contain any factual allegations to plausibly suggest that defendants have a direct financial interest in any infringement. Paragraph 138 alleges generally, on information and belief, that myVidster received direct financial benefits from the infringements by increasing its website traffic and generating storage fees, but that is true for all storage, not just unauthorized storage. Nothing in the complaint plausibly suggests that defendants directly profit from any specific infringement. Consequently, Count III fails to state a claim and is dismissed.

Count IV – Inducement of Copyright Infringement

"One who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement is liable for the resulting acts of infringement by third parties." MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 919 (2005). "[M]ere" knowledge of infringing potential or of actual infringing uses would not be enough . . . to subject a distributor to liability." Id. at 937. Instead, liability is premised "on purposeful, culpable expression and conduct." Id.

6

The instant complaint contains no allegation to suggest that defendants are purposefully inducing infringement. Indeed, in its response brief plaintiff admits that its allegations of advertisements found on defendants' blog are old and related to myVidster's now cancelled back up service. Absent any factual allegations relating to defendants' current activities, Count IV fails to state a claim and is dismissed.

Finally, although the court has analyzed each of plaintiff's specific copyright claims and concluded that plaintiff could potentially state claims for direct and/or contributory infringement based on the "new cloud system," there remains an overarching problem with each of the claims. As defendant has argued, the complaint fails to identify any actual infringement of any particular "work." In particular, the complaint (unlike the complaint in Flava I) fails to identify any specific video that defendant has either copied onto its cloud server, or that any member has downloaded from that server or from a host server using defendants' technology. Instead, the complaint merely attaches a list of videos that plaintiff claims to have copyrighted.

To remedy this problem, plaintiff attaches to its response brief a number of DMCA (Digital Millennium Copyright Act) "take down" letters that it sent to defendants. Plaintiff argues that it can provide these letters under the narrow exception to the four corners rule as stated in Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A party opposing .a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.") Defendant responds that the Geinosky footnote cannot reasonably be interpreted to allow documents attached to plaintiff's response to cure the absence of well-pleaded facts in the complaint.

This dispute is of no matter because the attached DMCA take down notices do not save the complaint. According to plaintiff, the DMCA notices simply identify "links." Nothing in the notice identifies whether the linked videos were then copied by myVidster which could create liability, or simply bookmarked for viewing, which clearly does not.

As noted by Judge Chang in <u>Flava Works, Inc. v. Clavio</u>, 2012 WL 2459146 *2 (N.D. Ill. June 27, 2012), implicit in the elements of all copyright infringement claims is the identification of an illegally infringed work. "Direct infringement requires copyright in and infringement of <u>a</u> <u>work</u>." <u>Id</u>. (emphasis in original). Derivative infringement claims are all premised on someone else's infringement of a work. Because the instant complaint fails to identify even a single infringed work, all four copyright claims are insufficient and are dismissed.

**<u>Non-Copyright Claims</u>**

<u>Count V – Breach of Contract</u>

To state a claim for breach of contract, plaintiff must plead facts to show: (1) the existence of a valid and enforceable contract; (2) substantial performance by plaintiff; (3) breach of the contract by defendant; and (4) resulting injury. <u>Avila v. CitiMortgage, Inc.</u>, 801 F.3d 777, 786 (7th Cir. 2015). There is no question that the settlement agreement is a valid and enforceable contract, and defendants do not challenge plaintiff's substantial performance. Instead, defendants argue that some (but not all) of plaintiff's claims are invalid because they do not show conduct in violation of the portions of the agreement cited by plaintiff.

The complaint sets out eight separate alleged breaches and identifies the paragraphs breached. Defendant challenges the breach alleged in ¶ 173 asserting that defendant reduced the

size of the ad space on its main page after the contract was executed, and in ¶ 174 asserting that defendants failed to make plaintiff's ads viewable by its paid users.

Defendant argues that nothing in the agreement dictates the size of plaintiff's ads. While that may be true, that does not mean that defendant could reduce the size of the ad to the point that they could not be viewed and still be acting in good faith. Defendant also argues that the agreement requires only that the ads be placed on myVidster's Adult Home Page. Even if true, however, that does not necessarily mean that defendant could create a separate adult home page for paid users without violating the agreement. See Dayan v. McDonald's Corp., 125 Ill App 3d. 972, 991 (1st Dist. 1984) ("[P]arty vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."). In any event, plaintiff has identified numerous other claims of breach that defendants do not challenge as stating claims for violation of specific provisions.

Defendants also argue that plaintiff has not pled an injury resulting from the breaches. Although the complaint does not quantify plaintiff's damages in monetary terms, it does allege a loss of business revenue and good will as a result of plaintiff's actions. Such allegations are sufficient at the pleading stage.

Counts VI, VII and VIII

Finally, plaintiff's claims in Counts VI-VIII are woefully deficient. With respect to plaintiff's trademark infringement and unfair competition claims, the complaint contains no allegation that defendants used plaintiff's marks in commerce. Indeed, the complaint fails to identify a single mark that defendants used, let alone used in commerce. The counts thus fail to

state a claim. See 15 U.S.C. § 1125(a)(1)(A). Likewise, because plaintiff's claim under the Illinois Deceptive Trade Practices Act is resolved under the same standard as is claimed under the Lanham Act, it fails for the same reasons. Specht v. Google Inc., 758 F.Supp.2d 570, 595-96 (N.D. Ill. 2010).

## CONCLUSION

For the reasons described above, defendants' motion to dismiss (Doc. 13) is granted as to all counts, except Count V. This matter is set for a report on status on February 6, 2018, at 9:00 a.m.

**ENTER:    January 30, 2018**

*[signature: Robert W. Gettleman]*

**United States District Judge**
**Robert W. Gettleman**