IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Flava Works, Inc., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| Marques Rondale Gunter d/b/a myVidster.com, SalsaIndy, LLC, d/b/a myVidster.com, | ) ) ) Case No. 1:17-cv-01171 ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Marques Rondale Gunter and SalsaIndy, LLC both d/b/a myVidster ("myVidster") through counsel, Neal, Gerber & Eisenberg, submit the following in support of their Motion for Summary Judgment.

**INTRODUCTION**

After years of unsuccessful litigation, Plaintiff seems to have given up on the merits of its case. Plaintiff's claims have been dismissed or rejected multiple times (in this proceeding and in similar prior proceedings between the parties), and Plaintiff has taken no meaningful action to advance its one remaining claim for breach of the parties' 2015 Settlement Agreement. Rather, it has become clear that Plaintiff's goal has simply been to do the bare minimum necessary to maintain a lawsuit against myVidster – and to draw that suit out as long as possible – to tax myVidster's resources (and those of the Court) while spending as little of Plaintiff's own time and money as possible. Plaintiff has failed to participate substantively in this case since May 2017 unless compelled by the Court. Plaintiff failed to amend its complaint after all but one of its claims

was dismissed, despite multiple representations to the Court that it intended to do so. Plaintiff did not serve a single discovery request. Plaintiff's small document production, produced only after myVidster was forced to file a motion to compel, is woefully inadequate to prove Plaintiff's contentions. Unsurprisingly, Plaintiff also failed to participate in drafting a joint Statement of Undisputed Material Facts, as recommended by the Court and requested by myVidster.

The material facts show that Plaintiff's remaining claim for breach of contract fails for two reasons. First, Plaintiff cannot show that myVidster has breached the Settlement Agreement in any material way. Indeed, the very terms of the Agreement are fatal to many of Plaintiff's allegations, as Plaintiff attempts to read additional and more specific obligations into the Agreement than are found in the actual terms. Moreover, Plaintiff's meager document production cannot prove any of the alleged breaches. Second, even if Plaintiff could show a breach, Plaintiff has utterly failed to produce any evidence that even touches on the subject of damages.

In other words, discovery (such as it was) has only confirmed what myVidfster communicated to Plaintiff from the start – myVidster is not, nor has it ever been, in breach of the parties' Settlement Agreement, and this case never should have been filed. Because Plaintiff cannot show the essential elements of its claim, summary judgment should be entered in myVidster's favor before any more time or resources are wasted on a case that Plaintiff itself seems to have little interest in litigating.

## BACKGROUND AND FACTS

As the Court is aware, this dispute dates back more than eight years. Plaintiff first sued myVidster in 2010 on various theories of copyright and trademark infringement. Only one of Plaintiff's claims survived myVidster's motion to dismiss, and that claim (for contributory copyright infringement) was rejected by the Seventh Circuit. After extensive litigation, the parties

entered a Settlement Agreement in 2015, and this Court dismissed all of Plaintiff's then-pending claims with prejudice. However, instead of accepting the terms of the Settlement Agreement and cooperating with myVidster to fulfill its goals, Plaintiff brought the instant action in 2017.

Plaintiff's copyright and trademark claims in this lawsuit were virtually identical to those that had been dismissed by this Court with prejudice in 2015. This Court again dismissed all of Plaintiff's claims except its breach of contract claim, and, despite Plaintiff's repeated representations to the Court that it intended to re-plead, Plaintiff failed to do so. Accordingly, the only remaining claim at issue is for breach of contract.

Plaintiff has done virtually nothing to prosecute its case. Indeed, Plaintiff has failed to meaningfully participate in this case in any way unless compelled to do so by the Court. During discovery, Plaintiff served no initial disclosures, no interrogatories, and no document requests. Plaintiff similarly failed to respond to or produce documents responsive to myVidster's written discovery requests, forcing myVidster to file a motion to compel. After the motion was granted, Plaintiff still waited until virtually the last minute allowed by the Court's order to respond to myVidster's discovery requests. When Plaintiff finally complied, it provided little more than the assertions already contained in its Complaint.

In fact, the totality of Plaintiff's production – which constitutes the entire record in this case – includes merely 39 DMCA notices allegedly sent to myVidster, 304 screenshots purportedly taken from myVidster's website (but lacking authentication), and 61 copyright registrations for Plaintiff's alleged works (which are irrelevant to the one remaining claim for breach of contract). SOF ¶1. None of these documents provide support for Plaintiff's claims that myVidster breached the Settlement Agreement, or that Plaintiff has been injured as a result of myVidster's alleged breaches. SOF ¶ 1-44.

**ARGUMENT**

I.  **LEGAL STANDARD**

Summary judgment is proper here because "there is no genuine dispute as to any material fact" and Plaintiff "is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Put another way, "a party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "To overcome a motion for summary judgment, [Plaintiff] must come forward with specific facts demonstrating that there is a genuine issue for trial," and must show that there is evidence upon which a jury could reasonably find in its favor. *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008).

As discussed above, the only remaining claim at issue is for breach of contract. To survive a motion for summary judgment on a breach of contract claim, the plaintiff must be able to point to evidence that shows (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of the contract by the defendant; and (4) a resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 814 N.E.2d 960, 967, 286 Ill. Dec. 734 (Ill. App. Ct. 2003)). Plaintiff cannot point to any evidence upon which a reasonable jury could find in its favor on at least the last two elements of its claim. *See Quantum Mgmt. Group, Ltd. v. Univ. of Chicago Hosps.*, 283 F.3d 901, 905 (7th Cir. 2002) (where a plaintiff fails to make a

4

sufficient showing on an essential element of its case, the defendant is entitled to summary judgment).

In addition, under Illinois law, myVidster is entitled to summary judgment because the unambiguous terms of the contract preclude the precise relief being sought by Plaintiff. *See Transportation & Transit Assoc., Inc. v. Morrison Knudsen Corp.*, 1999 U.S. Dist. LEXIS 2551, at *8-9 (N.D. Ill. Feb. 23, 1999) (citing *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App.3d 31, 628 N.E.2d 1165, 195 Ill. Dec. 701 (Ill. App. Ct. 1993)). In other words, because Plaintiff alleges myVidster failed to take certain actions, and those actions fall outside the obligations set forth in the Agreement's terms, Plaintiff cannot show myVidster breached the Agreement. *See Morrison Knudsen Corp.*, 1999 U.S. Dist. LEXIS 2551, at *8-9.

## II.  MYVIDSTER IS ENTITLED TO SUMMARY JUDGMENT

### A.  Plaintiff Cannot Establish myVidster Breached the Settlement Agreement.

Plaintiff alleges that myVidster breached the parties' 2015 Settlement Agreement by (i) not providing a tool that allows Plaintiffs to *instantaneously* remove links to allegedly infringing videos from the myVidster website; (ii) failing to disable the user accounts of alleged repeat infringers; (iii) taking too long to add Plaintiff to a "Do Not Post" list of forbidden videos; (iv) reducing the size of its home page banner ads and creating a tier of "Pro" users who pay an additional fee to avoid ads; and (v) failing to display Plaintiff's ads along with every link containing keywords that match those provided by Plaintiff.

Plaintiff's claims fail for three reasons. The first is simple: Plaintiff has not produced any evidence whatsoever that could reasonably establish any of the alleged breaches. Plaintiff has failed to prosecute its case and, as a consequence, is left with virtually nothing but its naked assertions in the record. Second, even if Plaintiff had produced evidence, the Agreement's

unambiguous terms show that myVidster could not have breached the Agreement in allegedly failing to take certain actions demanded by Plaintiff, because those actions fall outside myVidster's obligations as set forth in the Agreement. Finally, certain of Plaintiff's claims, even if true, would be considered mere trifles under the doctrine of *de minimis non curat lex*, as explained below.

### i. Plaintiff Cannot Possibly Show a Breach of Paragraph One.

Plaintiff alleges that myVidster breached Paragraph 1 because myVidster's link removal tool does not allow Plaintiff to *instantaneously* remove links to allegedly infringing videos. Rather, Plaintiff alleges that there is a lag of up to 24 hours. Compl. ¶ 64.

However, despite ample opportunity to support its case during discovery, Plaintiff has not produced a single document that shows the time frame in which links were taken down. Plaintiff provided nothing more than a handful of DMCA notices and a small number of documents purporting to show links to its videos on the myVidster website, without any additional context linking the two. SOF ¶ 1. For example, none of Plaintiff's documents show (i) a DMCA notice sent with respect to a particular link to an allegedly infringing video, and (ii) evidence that the link subsequently remained on the myVidster website. SOF ¶ 3. Thus, there is no evidence in the record that could lead a reasonable jury to find a breach of Paragraph 1 of the Agreement. SOF ¶ 4. Plaintiff is left to rely only on its naked allegations. *See Weicherding v. Riegel*, 160 F.3d 1139, 1142 (7th Cir. 1998) (the non-moving party may not rest upon mere denials or allegations in the pleadings but must set forth specific facts to raise a genuine issue for trial).

Moreover, even if Plaintiff's unsupported allegations were taken as true, they do not show that myVidster breached Paragraph 1. The Settlement Agreement provides, in relevant part, that myVidster would provide Plaintiffs with a tool to "directly remove links to infringing content appearing on the website." SOF ¶ 2. The plain terms do not require that the API tool enable Plaintiff

to remove links *instantaneously*. That would be unfeasible from a technical standpoint, as it would create a significant burden on the myVidster servers and risk crashing the website. SOF ¶ 5. Rather, the Agreement requires that Plaintiff be able to *directly* remove links to infringing content, without any specified time frame. The myVidster API tool does exactly that, as Plaintiff's reported links are removed directly, without any required intervening steps such as submission of a DMCA notice. SOF ¶ 6. Accordingly, even if Plaintiff had produced evidence, the unambiguous terms of Paragraph 1 are fatal to Plaintiff's claim.

> ii. **Plaintiff Cannot Point to Any Evidence Sufficient to Show myVidster Breached Paragraph 2 of the Settlement Agreement.**

No reasonable juror could find that myVidster breached Paragraph 2 of the Settlement Agreement because there is no evidence that myVidster failed to disable an Original Poster's account and infringing posts when required to do so under the terms of the Settlement Agreement.

Plaintiff first alleges that myVidster breached Paragraph 2 of the Settlement Agreement by failing, upon receipt of three DMCA notices, to disable an offending Original Poster's account on myVidster and remove infringing Flava content posted by such Original Poster. Compl. ¶ 65. Paragraph 2 of the Settlement Agreement requires myVidster to disable an individual user's account and any infringing content posted by that user only if three criteria were met: (1) Plaintiff was required to provide the **username** of the person who posted the allegedly infringing Flava video content; (2) that user had to be the **Original Poster** of the allegedly infringing Flava content; and (3) Plaintiff was required to provide the Original Poster's username to myVidster on **three separate** occasions, or at least three times. SOF ¶ 7-8. As set forth fully in Defendants' Statement of Facts, Plaintiff's documents do not show *any* usernames that satisfy all three criteria. SOF ¶ 9-14. Accordingly, Plaintiff cannot establish a breach of Paragraph 2 with respect to identified usernames.

Plaintiff also claims that myVidster breached Paragraph 2 by its treatment of certain Original Posters who were identified as "Unknown." Compl. ¶ 66. A user's account name shows up as "Unknown" if that user's account has been deleted by the user or disabled by myVidster. SOF ¶ 15. Plaintiff alleges that even after myVidster disabled a user's account pursuant to Plaintiff's DMCA notices, the video that allegedly infringed Plaintiff's copyrights continued to display. Compl. ¶ 66. There is, however, no evidence to support this allegation. SOF ¶ 16. In fact, the only evidence in the record that shows an Unknown username still displaying Plaintiff's content shows the Unknown user *linking* to that content, not posting it. SOF ¶ 17. This is expressly exempted by the terms of Paragraph 2. SOF ¶ 7 ("To be clear, an Original Poster is not a user that is merely linking to a link already present on myVidster.com"). Accordingly, there is no evidence that an Unknown Original Poster's posted content was not removed by myVidster, and myVidster is thus not in breach of Paragraph 2 on this theory either.

### iii. There is No Evidence to Support Plaintiff's Claim that myVidster Breached Paragraph 4 of the Settlement Agreement.

Plaintiff further cannot show that myVidster breached Paragraph 4 of the Settlement Agreement, which required myVidster to install a "Do Not Post" list within 30 days directing users not to link to Plaintiff's videos. SOF ¶ 19. There is simply no evidence to support Plaintiff's claim that myVidster waited until approximately three months after the Effective Date of the Settlement Agreement to do so. SOF ¶ 20. While Plaintiff produced purported screenshots of myVidster's website, none show a "Do Not Post" list, Plaintiff's absence from that list, or the date at which Plaintiff was allegedly added to that list. SOF ¶ 21. In addition, Plaintiff produced no correspondence between the parties other than Plaintiff's DMCA notices, and thus no correspondence that even suggests myVidster failed to add Plaintiff to its "Do Not Post" list until three months after the Settlement Agreement was signed. SOF ¶ 22. Without more than Plaintiff's

8

mere assertion on this point, Plaintiff cannot establish that myVidster breached Paragraph 4 of the Agreement, and its claim on this basis must fail.

Moreover, Illinois follows the doctrine of *de minimis non curat lex*, which means the "courts will not regard trifles." *See, e.g., Pacini v. Regopoulos,* 281 Ill. App. 3d 274, 665 N.E.2d 493, 497-8 (App. 1st Dist. 1996). The doctrine operates to place small, intangible injuries outside the scope of legal relief. *Id.* (quoting *Swick v. City of Chicago*, 11 F.3d 85 (7th Cir. 1993)). Even if Plaintiff had provided evidence to support its claim, a 60-day delay in adding Plaintiff's name to the "Do Not Post" list – for which Plaintiff has utterly failed even to state a theory of damages, as discussed below – cannot reasonably be considered anything other than a trifle. Even beyond Plaintiff's lack of evidence, myVidster is entitled to summary judgment on this claim based on the doctrine of *de minimis no curat lex*. *See, e.g., Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 6*, 2015 FEP Cases 176891, 2015 BL 7209 at *21 (C.D. Ill. Jan. 13, 2015) (granting summary judgment for defendants on breach of contract claims under doctrine of *de minimis no curat lex* where breach was inconsequential because it did not result in actual injury).

### iv. Plaintiff Cannot Possibly Show that myVidster Breached Paragraph 6 of the Parties' Settlement Agreement.

Plaintiff's breach of contract claim fails with respect to Paragraph 6 because, yet again, no evidence shows that myVidster breached the terms of Paragraph 6 and, in any event, the Settlement Agreement did not require that myVidster's adult home page banner ads be any particular size or be visible to *all* myVidster users. Paragraph 6 provides, in relevant part, that myVidster would place Plaintiff's ad banner "on the adult homepage of the myVidster.com website in the top right corner of the page" for a period of three years, commencing within 30 days. SOF ¶ 23.

Plaintiff alleges myVidster breached this provision in three ways: (i) by not adding the Flava banner to the adult home page until a year after the Settlement Agreement was signed; (ii)

9

by reducing the size of the ad space on myVidster's main page from 300x250 pixels to 300x60 pixels after the Settlement Agreement was executed; and (iii) by making the Flava banner on the adult home page not visible to pro users. Compl. ¶¶ 68-70. Here again, Plaintiff's claims must fail because Plaintiff has simply failed to prosecute its case, and has not produced any evidence whatsoever to support its allegations.

With regard to Plaintiff's first breach alleged, there is no evidence that even suggests myVidster failed to add the Flava banner to its adult home page within the time allotted by the Settlement Agreement. SOF ¶ 24. Indeed, Plaintiff did not produce a single screenshot of myVidster's adult home page with or without the Flava banner. SOF ¶ 25. Plaintiff produced no correspondence that shows Plaintiff objecting to the alleged absence of a Flava banner on myVidster's adult home page. SOF ¶ 26. Accordingly, there is no evidence to even suggest that myVidster failed to include the Flava banner on its adult home page within thirty days of the Settlement Agreement's Effective Date. SOF ¶ 27.

On Plaintiff's second point, there is a similarly complete lack of evidence regarding myVidster's adult home page ad size either before or after the Settlement Agreement was signed. SOF ¶ 28. Plaintiff failed to produce any screenshots showing myVidster's adult home page or the ad sizes in question. SOF ¶ 29. In addition, Plaintiff can point to no communications between the parties that even suggests that myVidster reduced the size of its adult home page banner after the parties' signed the Settlement Agreement, that Plaintiff objected to this alleged change, or that myVidster refused to acknowledge such objection. SOF ¶ 30. Without more than Plaintiff's assertions on this point, this claim, along with Plaintiff's claim that myVidster breached the covenant of good faith and fair dealing, must also fail.

For Plaintiff's third point, Plaintiff cannot show that myVidster breached the Agreement by not making the adult home page Flava banner ad visible to Pro users because there is no evidence that the Flava ad banner fails to display for myVidster Pro users on myVidster's adult home page. SOF ¶ 31. Here again, Plaintiff produced no screenshots of myVidster's adult home page as seen by Pro users (or at all). SOF ¶ 25. All we have, yet again, is Plaintiff's naked allegations, which are not enough for it to survive summary judgment.

Even if Plaintiff had produced evidence that the Flava banner did not display for Pro users, myVidster cannot be said to have breached either the terms of Paragraph 6 of the Agreement or the covenant of good faith and fair dealing. Nothing in Paragraph 6 requires a particular size for Plaintiff's banner, nor that it be displayed to *all* myVidster users. SOF ¶ 23. The Agreement requires only that it be displayed in a specific location on the myVidster homepage. *Id*.

With respect to the covenant of good faith and fair dealing, as stated in *Kham v. Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990):

> "Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved by the parties. When the contract is silent, principles of good faith—such as the UCC's standard of honesty in fact and the reasonable expectations of the trade …fill the gap." *Id*. at 1357.

There is no evidence to suggest that the parties "could not have contemplated" that myVidster would offer users the option to avoid ads in exchange for a higher premium. SOF ¶ 32. To the contrary, it is common for streaming services such as Hulu and Spotify to offer users that option. Had the parties intended to prevent such an option, they could have included language to that effect. Without such language and, indeed, without any proof that the Flava banner actually fails to display for Pro users, Plaintiff again cannot establish breach of this part of the Agreement. In

addition, as set forth below, Plaintiff has not even specified how it was allegedly injured by the purported breaches, let alone producing any evidence bearing on damages.

### v. myVidster Supplies a Banner Under Videos Identified Using Plaintiff's Keywords, Thus myVidster is Not In Breach of Paragraph 7.

myVidster is not in breach of Paragraph 7, which requires myVidster to use keywords provided by Plaintiff to search for video titles and descriptions that match those keywords and display Plaintiff's banner advertisement below such videos. SOF ¶ 33. Plaintiff nonetheless claims that myVidster breached Paragraph 7 of the Settlement Agreement because titles and descriptions for videos allegedly contain Plaintiff's keywords, but Plaintiff's banner does not display underneath. Compl. ¶ 71.

Plaintiff produced purported screenshots of myVidster webpages showing 193 videos, where banners could be seen beneath the video. SOF ¶ 34. Of these 193 videos, only 47 included Plaintiff's keywords, and 41 displayed Plaintiff's banners. *Id.* The purported absence of Plaintiff's banners from 6 videos was likely due to keyword mismatch caused by misspellings or inaccuracies in the videos' titles or descriptions, which are generated by users. SOF ¶ 35. For example, while Plaintiff's keyword list includes "Keymancheo," myVidster's tool may not match that to "Kemancho," a misspelling of that keyword. myVidster cannot be liable for failing to display Plaintiff's banner where the user input does not actually match Plaintiff's keywords.

Moreover, any minor imperfections in the functioning of myVidster's keyword tool fall outside the scope of legal relief, even if they could technically be couched as a "breach," under the doctrine of *de minimis non curat lex*, as discussed above. Finally, even if the court were to find that the doctrine did not apply and that myVidster breached Paragraph 7, Plaintiff cannot point to any damages that resulted from the alleged breach, as discussed below.

Plaintiff's lack of participation in these proceedings has left Plaintiff unable to provide evidence that myVidster breached the Settlement Agreement in any of the ways alleged. Accordingly, myVidster is entitled to summary judgment on that basis.

### B. Plaintiff Cannot Establish Damages, an Essential Element of Its Claim.

In addition to Plaintiff's complete failure to produce evidence supporting any of the various allegations underlying its breach of contract claim, Plaintiff's claim also fails as a matter of law because Plaintiff provides no evidence to support its purported damages – an essential element of its claim. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23)). Indeed, the record contains no evidence whatsoever that even bears on Plaintiff's claim that it has purportedly suffered a loss of revenue or damage to its reputation, goodwill, or business.

As an initial matter, Plaintiff's claim that is has suffered damage to its business reputation and goodwill fails as a matter of law. In Illinois, damages to business reputation and goodwill are not recoverable in a breach of contract action. *See Sorkin v. Blackman, Kallick & Co., Ltd.*, 184 Ill. App.3d 873, 540 N.E.2d 999, 133 Ill. Dec. 133 (Ill. App. 1989) (citing *Chrysler Corp. v. E. Shavitz & Sons*, 536 F.2d 743 (7th Cir. 1976)). *See also Dacor Corp. v. Sierra Precision*, 753 F. Supp. 731, 733 (N.D. Ill. 1991) ("[D]amage to business reputation, or loss of good will, is not recoverable in a breach of contract claim under Illinois law.") (internal citations omitted). Even if such damages were recoverable, Plaintiff has produced no evidence – factual or opinion, lay or expert – to show that it has lost customers or that its reputation has or will suffer as a result of actions by myVidster. SOF ¶ 37. Without such evidence, no reasonable juror could find that Plaintiff has suffered damage to its reputation or goodwill, and such claim must therefore fail. *See Underground Solutions, Inc. v. Palermo*, 188 F.Supp.3d. 717, 733 (N.D. Ill. 2016).

Furthermore, Plaintiff cannot point to a shred of evidence to support its claim that is has suffered a loss of revenue and, as such, its breach of contract claim fails as a matter of both fact and law. It is well-settled in the Seventh Circuit that "[m]erely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2001). It is further insufficient to show only damages; a plaintiff must instead point to evidence upon which actual damages can be calculated with reasonable certainty. *Id.* at 637. Plaintiff does neither.

After ample opportunity to do so, Plaintiff cannot point to any evidence that establishes the existence of damages or lost revenue. SOF ¶¶ 37-39. Indeed, Plaintiff never even served initial disclosures providing a methodology for calculating its alleged damages, in violation of Rule 26(a)(1)(A)(iii). SOF ¶ 36. Plaintiff could have produced any number of types of documents or information to substantiate its damages claim: sales figures or documents, profit/loss statements, testimony with respect to lost revenues, or evidence bearing on traffic to Plaintiff's own website(s), just to name a few. All of these documents would have been entirely within Plaintiff's possession and control. Yet Plaintiff produced nothing bearing on its alleged damages in any way. SOF ¶ 38.

There is accordingly no evidence in the record – aside from Plaintiff's bare assertions – upon which a reasonable jury could find that Plaintiff has suffered a loss of revenue, let alone calculate such alleged loss. SOF ¶ 39. Even setting aside the lack of evidence that myVidster breached the parties' Agreement in the first place, Plaintiff's inability to establish damages – an essential element of its breach of contract claim – is alone sufficient to warrant entry of summary judgment in myVidster's favor.

## CONCLUSION

Plaintiff has not acted in good faith since the minute it filed this litigation. As Plaintiff's utter failure to prosecute its case shows, Plaintiff's sole interest has been in doing the bare minimum to allow this case to remain pending, while forcing Defendants, and the Court, to expend time and resources – including with respect to this Motion for Summary Judgment. However, Plaintiff's bad-faith conduct now brings consequences, in that Plaintiff cannot offer any evidence supporting its claims. As set forth above, the undisputed facts show that Plaintiff is unable to point to evidence upon which a reasonable jury could find that myVidster breached the Settlement Agreement or that Plaintiff was injured in any way – two elements that are essential to Plaintiff's breach of contract claim. Plaintiff should not be rewarded for its conduct in this litigation by being allowed to survive summary judgment. For the foregoing reasons, the Court should grant summary judgment in favor of Defendants rather than allowing Plaintiff to continue to draw out this vexatious litigation while taking virtually no action of its own.

Dated: December 14, 2018

Respectfully submitted,

/s/      Andrew S. Fraker
One of the Attorneys for Defendants

Gregory J. Leighton
Andrew S. Fraker
Kara C. Smith
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
(312) 269-8000
gleighton@nge.com
afraker@nge.com
ksmith@nge.com

**CERTIFICATE OF SERVICE**

  I, Andrew S. Fraker, an attorney, state that I served a copy of the foregoing ***Defendants' Memorandum of Law in Support of Motion for Summary Judgement*** upon:

  Adam S. Tracy
  The Tracy Firm Ltd.
  141 W. Jackson Blvd.
  Chicago, Illinois 60604

by the ECF system on December 14, 2018.

              /s/  Andrew S. Fraker
                 Andrew S. Fraker

28698749.4