# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Flava Works, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Marques Rondale Gunter d/b/a myVidster.com, SalsaIndy, LLC, d/b/a myVidster.com, <br><br> Defendants. | Case No. 1:17-cv-01171 <br> Judge Robert W. Gettleman |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Marques Rondale Gunter and SalsaIndy, LLC, both d/b/a myVidster.com (collectively "Defendants" or "myVidster"), by and through their attorneys, Neal, Gerber & Eisenberg LLP, hereby submit this Statement of Material Fact in support of their Motion for Summary Judgment pursuant to Local Rule 56.1(a)(3).

### *Plaintiff Has Shown No Evidence of Breach*

1.  Plaintiff produced 785 pages of documents falling into three categories: (1) DMCA Notices to myVidster; (2) Unauthenticated screenshots purportedly taken from the myVidster website; and (3) Copyright registrations for various works allegedly owned by Flava Works, Inc. *Id*. at ¶ 8.

2.  Paragraph 1 of the Settlement Agreement provides:

    [Paragraph 1] <u>API Tool</u>. Within thirty (30) days of the Effective Date, Defendants will provide Webmasters (as defined herein) access to a back-end application program interface (API) tool on the myVidster.com website that allows Webmasters to see the source of infringing content and directly remove links to infringing content appearing on the website; provided that, each Webmaster must first authentic itself and request access from myVidster.com

to this API. A "Webmaster" is any person or company that owns and operates a website. Defendants will ensure that when a Webmaster removes a link to infringing content appearing on the myVidster.com website, the entire post or page associated with that link will also be removed thereby preventing the public from accessing the page or post containing the infringing material on the myVidster.com website, including posts or comments relating to the infringing material on the myVidster.com website. Subject to the terms herein, Defendants will provide notification on the myVidster.com website of the availability of this API tool.

(Compl. Exhibit A at ¶ 1.)

3. None of Plaintiff's documents show (i) a DMCA notice sent with respect to a particular link to an allegedly infringing video, and (ii) evidence that the link subsequently remained on the myVidster website.

4. There is no evidence that myVidster breached Paragraph 1 of the Settlement Agreement.

5. It would be unfeasible from a technical standpoint to provide Plaintiff with a tool that enables Plaintiff to instantaneously remove links to allegedly infringing videos, as it would create a significant burden on the myVidster servers and risk crashing the website.

6. The API tool provided by myVidster allows Plaintiff to remove links directly, without any required intervening steps such as submission of a DMCA notice or any human action by myVidster. All links reported by Plaintiff are placed in an automated queue and are removed automatically during a period of low server traffic, typically in the early-morning hours, on a daily basis.

7. Paragraph 2 of the Settlement Agreement provides:

[Paragraph 2] Termination of Accounts. Within thirty (30) days of the Effective Date, Defendants will adopt a policy, wherein if Defendants are advised by Plaintiff that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video, Defendants will send that user a notice. If Defendants are advised by Plaintiff on three separate occasions that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video (i.e., after that

user has received two notices from myVidster), that user will be considered in violation of myVidster's terms and conditions and Defendants will disable his/her account, including any infringing materials posted by that user. An "Original Poster" is the user that initially linked the content at issue to myVidster.com and who is, therefore, responsible for first introducing the link at issue to the myVidster.com ecosystem. To be clear, an Original Poster is not a user that is merely linking to a link already present on myVidster.com. To facilitate identification of Original Posters, feature to the myVidster.com website that displays the username of the Original Poster beneath the name of each video on myVidster.com (e.g., a caption in the form of "Originally collected by [USER NAME]").

(Compl. Exhibit A at ¶ 2).

8. In other words, Paragraph 2 of the Settlement Agreement requires myVidster to disable an individual user's account and any infringing content posted by that user only if three criteria were met: (1) Plaintiff was required to provide the **username** of the person who posted the allegedly infringing Flava video content; (2) that user had to be the ***Original Poster*** of the allegedly infringing Flava content; and (3) Plaintiff was required to provide the Original Poster's username to myVidster on ***three separate*** occasions, or at least three times.

9. Of the allegedly offending usernames that Plaintiff reported to myVidster, only three users were Original Posters of content.

10. Plaintiff, however, only reported those usernames one time to myVidster.

11. Plaintiff's production also shows that when a username posted more than one offending video, Plaintiff would report that username more than once in a single notice to myVidster.

12. Of the allegedly offending usernames that Plaintiff provided, only five of those usernames were submitted to myVidster three times or on three separate occasions.

13. There is no evidence that the users at issue were Original Posters of any of Plaintiff's content.

14. There is no evidence that myVidster failed to disable the accounts of the users at issue because no evidence shows that these accounts remained active after being reported to myVidster.

15. A myVidster user's account name shows up as "Unknown" if that user's account has been deleted by the user or disabled by myVidster pursuant to one of Plaintiff's DMCA takedown notices.

16. There is no evidence that myVidster failed to remove allegedly infringing Flava videos that were posted by Unknown Original Posters.

17. The only evidence in Plaintiff's production that shows an "Unknown" username shows the Unknown username linking to a video. This video's Original Poster was not an Unknown user.

18. There is no evidence that myVidster breached Paragraph 2 of the Settlement Agreement.

19. Paragraph 4 of the Settlement Agreement provides:

> [Paragraph 4] <u>Do Not Post List</u>. Within thirty (30) days of the Effective Date, Defendants will install a "Do Not Post" list on myVidster.com that directs myVidster users not to post links to certain production companies or studios, including Flava Works.

(Compl. Exhibit A at ¶ 4.)

20. There is no evidence that myVidster waited approximately three months after the Effective Date of the Settlement Agreement to add Flava to its "Do Not Post" list.

21. Plaintiff produced purported screenshots of myVidster's website, but none show a "Do Not Post" list, Plaintiff's absence from that list, or the date at which Plaintiff was allegedly added to that list.

22.     Plaintiff produced no correspondence between the parties other than Plaintiff's DMCA notices, and thus no correspondence that even suggests myVidster failed to add Plaintiff to its "Do Not Post" list until three months after the Settlement Agreement was signed.

23.     Paragraph 6 of the Settlement Agreement provides:

> [Paragraph 6] <u>Flava Works Advertisements</u>. Defendants will include for a term of three (3) years commencing within thirty (30) days of the Effective Date a Flava Works banner on the adult home page of the myVidster.com website in the top right corner of the page under the "Create your own Video Collection" heading. This Flava Works banner shall be designed by Plaintiff, and submitted through I-frame banner code such that Plaintiff shall maintain control of the Flava Works banner and may update it as often as Plaintiff desires; provided that, Defendants retain a right of reasonable refusal for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website.

(Compl. Exhibit A at ¶6.)

24.     There is no evidence that myVidster failed to add a Flava banner to myVidster's adult home page until a year after the Effective Date of the Settlement Agreement.

25.     Plaintiff did not produce a single screenshot of myVidster's adult home page with or without the Flava banner.

26.     Plaintiff produced no correspondence that shows Plaintiff objecting to the alleged absence of a Flava banner on myVidster's adult home page.

27.     There is no evidence that myVidster failed to include the Flava banner on its adult home page within thirty days of the Settlement Agreement's Effective Date.

28.     There is no evidence that myVidster reduced the size of its ad space on its main page after the parties executed the Settlement Agreement.

29.     Plaintiff failed to produce any screenshots showing myVidster's adult home page or the ad sizes in question.

30. There is no evidence that Plaintiff reached out to myVidster concerning the size of its ad space on its adult home page or that myVidster thereafter refused to change the size of its ad space on its adult home page.

31. There is no evidence that the myVidster's Pro users do not encounter the Flava banner on the adult home page of the myVidster.com website in the top right corner of the page.

32. There is no evidence to suggest that the parties could not have contemplated that myVidster would offer users the option to avoid ads in exchange for a higher premium.

33. Paragraph 7 of the Settlement Agreement provides:

> [Paragraph 7] <u>Flava Works Banners</u>. Defendants will, within thirty (30) days of the Effective Date, use the keywords listed in Schedule A to identify Flava Works videos by searching only the title and description of videos on the myVidster.com website, and will include a banner advertisement designed by Plaintiff beneath each such identified video. This banner advertisement is subject to Defendants' approval, which shall not be withheld except for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website. Plaintiff may supplement this list of keywords a total of four (4) times per year, provided that Defendants retain a right of reasonable refusal in deciding whether to adopt such additional, supplemental keywords in the event a proposed keyword is overly-broad or likely to create a large number of false positive hits. In the event that Defendants invoke their reasonable right of refusal based on their belief that a particular keyword is not proprietary to or uniquely associated with Plaintiff, Plaintiff may provide proof of ownership thereof. If Plaintiff provides suitable proof of ownership of a particular keyword, Defendants shall withdraw their refusal. In the event that Plaintiff cannot establish proof of ownership of a particular keyword, Defendants will have no obligation to use that term in identifying Flava Works videos and need not include a banner advertisement beneath videos relating to that keyword. Plaintiff hereby represents and warrants that all model and actor names included in Schedule A as keywords are proprietary to Plaintiff or otherwise refer to models and/or actors who work exclusively for Plaintiff.

(Compl. Exhibit A at ¶ 7.)

34. Plaintiff produced purported screenshots of videos that have banners appearing below the video. Of these 193 videos, only 47 of them contain Plaintiff's keywords, and 41 have "Flava Works" banners below the video.

35. While myVidster's keyword matching tool is largely accurate and enables Plaintiff's banners to display below videos that include Plaintiff's keywords, the tool depends on accurate inputs. When a user misspells, miss-types, or fails to include the full keyword(s), the tool may not recognize the word as a keyword and Plaintiff's banner may fail to display.

*Plaintiff Has Shown No Evidence of Damages*

36. Plaintiff made no disclosure of damages in its initial disclosures as Plaintiff never served initial disclosures.

37. There is no evidence that Plaintiff has suffered damage to its reputation, goodwill, or business.

38. Plaintiff has not produced any documents bearing on sales or revenue.

39. There is no evidence that Plaintiff has suffered a loss of revenue.

Dated: December 14, 2018  Respectfully submitted,

   /s/Andrew S. Fraker
One of the Attorneys for Defendants

Gregory J. Leighton
Andrew S. Fraker
Kara C. Smith
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
(312) 269-8000
gleighton@nge.com
afraker@nge.com
ksmith@nge.com

# CERTIFICATE OF SERVICE

I, Andrew S. Fraker, an attorney, state that I served a copy of the foregoing *Defendants' Rule 56 Statement of Undisputed Material Facts* upon:

>Adam S. Tracy
>The Tracy Firm Ltd.
>141 W. Jackson Blvd.
>Chicago, Illinois 60604

by the ECF system on December 14, 2018.

>/s/     Andrew S. Fraker
>        Andrew S. Fraker

28683719.2