# IN THE UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FLAVA WORKS, INC., | ) | |
| | ) | Case No. 2017 cv 1171 |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | Hon. Ronald Gettleman |
| | ) | |
| SALSAINDY, LLC, & | ) | |
| MARQUES GUNTER, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, Flava Works, Inc., by and through its attorneys, and provides this Response in Opposition to Defendants' Motion for Summary Judgment, states as follows:

### Introduction

Plaintiff Flava Works, Inc. is a producer of adult content, nearly all of which is subject to various registered copyrights. Plaintiff sells it content through a series of websites, distributors and licensees. On its websites, Plaintiff charges a fee for access to its content.

Plaintiff's website users are further required to agree not to copy, transmit or sell the content. However, users are allowed to download content for personal and non-commercial use. As a result, a great deal of Plaintiff's content can at times be found in the public domain. Plaintiff is an active litigant and takes great lengths to protect its proprietary, protected, content.

Websites such as the one which forms the basis of Plaintiff's Complaint, myVidster.com, are breeding grounds for copyright infringers. The website acts are a social video sharing platform which allows users to upload and share videos they find online. myVidster users are further able to download videos posted by other website users or even save them on myVidster's cloud storage.

For many years, and continuing as of today, Plaintiff's content can be found on myVidster. Users of Plaintiff's websites, myVidster users and others continue to illegally post Plaintiff's content on the website. While all social video sharing websites pose a problem to any rights owner, myVidster is particularly problematic for Plaintiff as it is one of the most popular websites of its kind in the United State and worldwide, and is one of the few that allows adult content to be posted.

This is, of course, not the first time Plaintiffs and Defendants have met in this Court. On October 12, 2010, Plaintiff filed a complaint against Defendants alleging various copyright violations. After extensive litigation, on March 17, 2015, the parties entered into the Settlement Agreement and the prior litigation was dismissed. That Settlement Agreement forms the basis of the remaining Count of Plaintiff's Complaint.

Plaintiff's breach of contract claim consists of eight (8) separate breaches of the confidential settlement agreement resolving prior litigation between the parties (the "Settlement Agreement") (*see* Complaint at ¶¶168-175). Defendants entered into the Settlement Agreement in bad faith without any intent to adhere to the same. As a direct and proximate result of the various breaches of contract, Plaintiff has been injured.

Indeed, Plaintiff has grown weary of litigation with Defendants, which has significantly taxed its resources. However, Defendants' willful and continuing breaches of the Settlement Agreement leave it no choice but to pursue this path. Defendants' own bad faith in entering into the Settlement Agreement has made this litigation necessary, not some alleged scheme by Plaintiff to force Defendant into another settlement, which they would presumably never adhere to either.

At the same time, Defendants take great umbrage with Plaintiff's discovery production in this litigation. However, a motion for summary judgment is not the proper setting to argue the relative completeness of a discovery response. Defendants had ample opportunity to object to the

Plaintiff's discovery responses but failed to do so – assuming they in fact had valid basis to object, which they in fact did not.

## Settlement Agreement

The first paragraph of the Settlement Agreement provides:

> API Tool. Within thirty (30) days of the Effective Date, Defendants will provide Webmasters (as defined herein) access to a back-end application program interface (API) tool on the myVidster.com website that allows Webmasters to see the source of infringing content and directly remove links to infringing content appearing on the website; provided that, each Webmaster must first authentic itself and request access from myVidster.com to this API. ''Webmaster" is any person or company that owns and operates a website. Defendants will ensure that when a Webmaster removes a link to infringing content appearing on the myVidster.com website, the entire post or page associated with that link will also be removed thereby preventing the public from accessing the page or post containing the infringing material on the myVidster.com website, including posts or comments relating to the infringing material on the myVidster.com website. Subject to the terms herein, Defendants will provide notification on the myVidster.com website of the availability of this API tool.

While paragraph three of the Settlement Agreement provides:

> Assurances. Defendants will provide reasonable assurances that the API takedown tool provided pursuant to Paragraph 1 above is functional and will continue to be functional while the myVidster.com website is operational. If at any point the API tool should become non-functional while the myVidster.com website is operational, Defendants shall be required to return the tool to full functioning capacity within 72 hours of Defendants receiving notice that the API tool is not functional; provided that, if it is physically impossible to return the API tool to full functioning capacity within 72 hours by virtue of circumstances beyond Defendants' control, Defendants shall not be in breach of this provision by failing to do so within 72 hours, but Defendants will restore the API tool to full capacity as soon as physically possible.

There are countless links to Plaintiff's protected content found on myVidster. Defendants were required to provide Plaintiff with a tool that would give Plaintiff the ability to directly remove the infringing links from myVidster. Defendants have never provided the tool to Plaintiff. As a result, Plaintiff has been forced to rely on a mechanical "flagging" process to alert Defendants on the existence of links to infringing content. The "flagging" process is inferior insomuch that it is demonstrably slower – taking over one day for the link to be removed by Defendants. Moreover,

the mechanical process leaves many of the infringing links on myVidster as Plaintiff is forced to engage in a time-consuming process for identifying the links.

The second paragraph of the Settlement Agreement provides:

Termination of Accounts. Within thirty (30) days of the Effective Date, Defendants will adopt a policy, wherein if Defendants are advised by Plaintiff that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video, Defendants will send that user a notice. If Defendants are advised by Plaintiff on three separate occasions that a myVidster user is the Original Poster (as defined herein) of a link on myVidster.com to an allegedly infringing Flava Works video (i.e., after that user has received two notices from myVidster), that user will be considered in violation of myVidster's terms and conditions and Defendants will disable his/her account, including any infringing materials posted by that user. An "Original Poster" is the user that initially linked the content at issue to myVidster.com and who is, therefore, responsible for first introducing the link at issue to the myVidster.com ecosystem. To be clear, an Original Poster is not a user that is merely linking to a link already present on myVidster.com. To facilitate identification of Original Posters, feature to the myVidster.com website that displays the username of the Original Poster beneath the name of each video on myVidster.com (e.g., a caption in the form of "Originally collected by [USER NAME)").

Much of Plaintiff's content found on myVidster can be attributed to certain "serial" posters who have access to Plaintiff's websites. Here, Defendants agreed to curtail habitual posters of infringing links on mvVidster when in receipt of three (3) or more Digital Millenium Copyright Act ("DMCA") takedown notices. Plaintiff has sent, and continues to send, countless DMCA notices to Defendants alerting them of the serial posters of Plaintiff's content. Despite this, Defendants have failed to take the required action of disabling the posters' accounts and removing the infringing links. As a result, the habitual posters continue to unlawfully post Plaintiff's content on myVidster without recourse.

The fourth paragraph of the Settlement Agreement, in relevant part, provides:

Do Not Post List. Within thirty (30) days of the Effective Date, Defendants will install a "Do Not Post" list on myVidster.com that directs myVidster users not to post links to certain production companies or studios, including Flava Works.

"Do Not Post" notices are important to rights owner in that they alert website users of the potential ramifications of copyright infringement. Defendants breached paragraph four of the Settlement Agreement when it waited until approximately three months after the effective date of the Settlement Agreement to add Plaintiff to its "Do Not Post" list. As a result, the number of infringing links found on myVidster continued to increase during that period.

> Paragraph five of the Settlement Agreement provides:
>
> Disclosure of User Information. Upon termination of a myVidster user's account pursuant to Paragraph 2 above, Defendants will disclose to Flava Works certain personal data relating to that user where such data is in Defendants' possession. This personal data may include, · and is limited to, the user's: first and last name, login history (which includes date, time, and IP address at time of login), email address, internet protocol (IP) address, physical and billing address, and last four digits of his/her credit card. By agreeing to this provision, Defendants are in no way representing that they actually possess any of this information for any of their users.

As stated above, Defendants have willfully ignored the multitude of DMCA takedown notices that it receives from Plaintiff. Accordingly, Defendants have failed to disable the user accounts of the primary posters of infringing links on myVidster. Insomuch that they have tacitly approved the continued abuse by these serial infringers, they have likewise handcuffed Plaintiff's ability to seek relief against such individuals by refusing to comply with the terms of paragraph five and provide certain identifying information to Plaintiff.

> The sixth paragraph of the Settlement Agreement provides:
>
> Flava Works Advertisements. Defendants will include for a term of three (3) years commencing within thirty (30) days of the Effective Date a Flava Works banner on the adult home page of the myVidster.com website in the top right corner of the page under the "Create your own Video Collection" heading. This Flava Works banner shall be designed by Plaintiff, and submitted through I-frame banner code such that Plaintiff shall maintain control of the Flava Works banner and may update it as often as Plaintiff desires; provided that, Defendants retain a right of reasonable refusal for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website.

Defendants breached the terms of paragraph six by first failing to add Plaintiff's advertising banner to myVidster for approximately one year following the effective date of the Settlement Agreement. Moreover, Defendants acted in bad faith when it knowingly reduced the size of the add space after the execution of the Settlement Agreement. The smaller, less effective banner add remains on myVidster yet is not seen by all the website users, with "pro" users being excluded. The year long delay in placing the advertisement, combined with the smaller size and lack of uniform visibility has impaired the advertisement's effectiveness and has directly caused a loss of revenue to Plaintiff.

>Paragraph seven of the Settlement Agreement provides:

>Flava Works Banners. Defendants will, within thirty (30) days of the Effective Date, use the keywords listed in Schedule A to identify Flava Works videos by searching only the title and description of videos on the myVidster.com website, and will include a banner advertisement designed by Plaintiff beneath each such identified video. This banner advertisement is subject to Defendants' approval, which shall not be withheld except for banner advertisements that are disparaging or defamatory, violate Defendants' Terms of Service, violate any law, or are otherwise detrimental to Defendants' website. Plaintiff may supplement this list of keywords a total of four (4) times per year, provided that Defendants retain a right of reasonable refusal in deciding whether to adopt such additional, supplemental keywords in the event a proposed keyword is overly-broad or likely to create a large number of false positive hits. In the event that Defendants invoke their reasonable right of refusal based on their belief that a particular keyword is not proprietary to or uniquely associated with Plaintiff, Plaintiff may provide proof of ownership thereof. If Plaintiff provides suitable proof of ownership of a particular keyword, Defendants shall withdraw their refusal. In the event that Plaintiff cannot establish proof of ownership of a particular keyword, Defendants will have no obligation to use that term in identifying Flava Works videos and need not include a banner advertisement beneath videos relating to that keyword. Plaintiff hereby represents and warrants that all model and actor names included in Schedule A as keywords are proprietary to Plaintiff or otherwise refer to models and/or actors who work exclusively for Plaintiff.

Paragraph seven requires Defendants to show Plaintiff's banner advertisement each time certain keywords identified by Plaintiff are searched on myVidster. Despite this, the banner advertisement fails to show when any of the keywords are searched. Again, Plaintiff faces a loss of revenue by virtue of the advertisements failing to show.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Life Plans, Inc. v. Security Life of Denver Ins. Co., 800 F.3d 343, 349 (7th Cir. 2015). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." Life Plans, Inc., 800 F.3d at 349.

In Illinois, "[t]o prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." Spitz v. Proven Winners N. Am., LLC, 759 F.3d 724, 730 (7th Cir. 2014). Illinois courts "look to the contract as a whole in interpreting its individual terms, adopting an understanding of the language that is natural and reasonable." Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Group, Inc., 762 F.3d 673, 679 (7th Cir. 2014). In other words, "[t]erms of a [contract] which are clear and unambiguous must

be given effect as written." JPMorgan Chase Bank, N.A. v. East-West Logistics, 9 N.E.3d 104, 115, (1st Dist. 2014).

## Argument in Opposition

Defendants have unequivocally breached various terms of the Settlement Agreement. The first and third paragraphs of the Settlement Agreement required Defendants to provide Plaintiff with an API tool to *directly* remove infringing links from myVidster. By their own admission, Defendants contend that the tool they agreed to provide is not technically possible and therefore was not provided to Plaintiff. Statement of Facts at ¶ 4. Yet, Defendants agreed to provide the API tool. The tool that Defendants did provide is not what was bargained for in the Settlement Agreement as it requires a mechanical process by Plaintiff and removes links over a day after identification. Statement of Facts at ¶ 5.

Paragraph two the Settlement Agreement required Defendants to disable the accounts of serial posters of infringing links. Statement of Facts at ¶ 8. Plaintiff did in fact provide the requisite notices to Defendants on numerous occasions. Statement of Facts at ¶ 12. Plaintiff further provided a comprehensive list of such users in its discovery responses to Defendants. Defendants willfully ignored those notices and have failed to take the required action of disabling the posters' accounts and removing the infringing links.

Paragraph four of the Settlement Agreement required Defendants to include Plaintiff on its "Do Not Post" list found on myVidster. Defendants failed to include Plaintiff on the list for approximately three (3) months following the Effective Date of the Settlement. Statement of Facts at ¶ 20. The inclusion of Plaintiff on the "Do Not Post" list was at all times completely within the control of Defendants, but Defendants failed to comply.

The sixth paragraph of the Settlement Agreement provided that Defendants were required to add Plaintiff's banner advertisement to myVidster for approximately one year following the effective date of the Settlement Agreement. Statement of Facts at ¶ 24. Moreover, once the add was placed it was made smaller than what was originally contemplated in the Settlement Agreement. Defendants failed to place the advertisement for a period of approximately one year, and when it did comply the compliance was insufficient as the advertisement size had been reduced. Statement of Facts at ¶ 27-28.

Paragraph seven of the Settlement Agreement requires Defendants to show Plaintiff's banner advertisement each time certain keywords identified by Plaintiff are searched on myVidster. Plaintiff produced screenshots indicating that the banner advertisements were in fact not showing when required. Statement of Facts at ¶ 34. Defendants contend that the failure of the banner advertisement to display is the result of user error, but that fact is immaterial to the bargained for terms found int the Settlement Agreement.

Finally, Plaintiff has properly alleged damages in its Complaint, including actual and compensatory damages for Defendants' willful breaches of the Settlement Agreement. Plaintiff further responded in its response to Defendants' Interrogatories its basis for damages caused by Defendants' breaches of contract. As a direct and proximate result of Defendants conduct, Plaintiff has incurred a loss of revenue related to: (a) the continued posting of Plaintiff's protected works on the myvidster.com website; (b) the failure to display and/or properly display Plaintiff's advertisements on the myvidster.com website; and (c) the impaired reputation of Plaintiff caused by the continued dilution of its protected works.

## Conclusion

WHEREFORE, Plaintiff Flava Works, Inc. moves this Honorable Court for an Order denying Defendants Motion for Summary Judgment.

Dated: January 18, 2019         FLAVA WORKS INC

                                /s/ Adam S. Tracy_____
                                By Its Attorney

Adam S. Tracy
(ARDC 6287552)
The Tracy Firm, Ltd.
141 W. Jackson Blvd.
Suite 2172
Chicago, IL 60604
312.754.9499 Tel.
630.689.9471 Fax
at@tracyfirm.com

## CERTIFICATE OF SERVICE

I, Adam S. Tracy an attorney, state that I served a copy of the foregoing Defendants' Rule 56 Statement of Undisputed Material Facts upon:

Gregory J. Leighton
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801

by the ECF system on January 20, 2018

                                /s/ Adam S. Tracy_____